Wm. L. Boyd and others by J. L. Boyd, their Father and Guardian vs. Dennis Boyd.—*December,* 1833.

Upon a bill filed by complainants in the character and capacity of infants, claiming the equitable interposition of Chancery in their behalf, the fact of infancy is a material allegation, and should be sustained by proof, if not admitted by the answers.

Where a testator devised as follows, viz. "$10,000, of which you (the devisee) are already in possession of the greatest part, is to be at your disposition, and for your use, free of interest, during your natural life-time; but after your death to be invested in bank stock, in the name of, and for and on account jointly and equally of the children of J;" and the residuary legatees, infants, filed a bill to invest the fund immediately; a charge that the fund was in danger in the hands of the legatee for life, was held to be indispensable under the circumstances of the case, to warrant the court in placing the fund in a different situation from that directed by the testator.

A defendant in Chancery was returned summoned, and did not answer: an interlocutory decree was passed against him, and an *ex parte* commission issued, under which some evidence was returned. The cause was then put down for final hearing, and the bill dismissed by the Chancellor. Upon appeal, it appearing that the defendant had a sum in his hands which the complainants were entitled to have invested for their use, this court reversed the decree of the Chancellor, and remanded the cause, with liberty to amend proceedings, and produce further proofs.

Appeal from the court of Chancery.

This bill was filed by the appellants on the 11th April, 1831. It stated that *William L. Boyd,* the uncle of the complainants, all of whom are minors, died some time in the year 1827, having first made his last will and testament, now duly admitted to probate, and that letters of administration with the said will annexed have been granted to the appellee by the Orphans court of *Baltimore* county. That by the said will, the appellee is entitled, of the testator's estate, to the use of $10,000 during his natural life, free of interest, with directions that the same shall be invested after his death in bank stock, in the name of, and for account jointly and equally of the complainants, the children of

Vol. VI.—4

*Jeremiah L. Boyd;* and that all other moneys that should be remitted to said *Dennis,* (the appellee) the testator directed to be invested in stock of the *Bank of the United States,* also in the name of, and for the equal benefit of the said complainants. That there has been remitted to and received by the appellee, of the estate of the said testator, the sum of at least $10,000, the whole of which, as he left no debts unsatisfied, is subject to the directions of his will. That twenty-three months have elapsed since the grant of letters to the appellee, whose pecuniary circumstances are such as to make it probable, that without the interposition of the Chancery court for the security of the complainants, the said sum of $10,000, mentioned in the said will, will not after the death of the said appellee remain entire to be invested for them; but on the contrary they believe, and so charge their fears to be, that if said sum of $10,000 be allowed to remain blended with the common property of the appellee, and thus involved with the chances of his business, the views of the testator with reference thereto will be entirely defeated. The bill then alleged, that the residue of the testator's estate over the $10,000 should be directed to be invested for their use, according to the will, which they allege not yet to have been done. That the complainants do not know what sums of money or property the appellee has received, for which he is accountable as aforesaid to them; or whether he may not at the date of the will have been indebted to the testator for money lent, or on other account. The bill then prayed for a discovery in reference to all these matters, and that the appellee may be compelled to invest the said sum of $10,000, or to execute such conveyances and securities in that behalf, as to the Chancellor shall seem right, for the protection of the interests of the complainants, and for general relief.

The will, a copy of which was filed as an exhibit with the bill, was in the form of a letter, dated at *Rio de Janeiro,* 19th July, 1827, and was in the following words.

"Dear *Dennis*,—I have been confined for two weeks, but am about again, and being alarmed at the nature of my disease, determined at once to try a sea voyage, and therefore have taken my passage in the brig *Cervantes*, to sail in the morning for *Baltimore*, where I hope to be before you have any intimation of my coming.

"In case of my death before we meet again, and as I have made no will or disposition of my affairs, I want you to observe, and make such a disposition of the moneys that may come into your hands, as expressed by me in this letter, to wit: ten thousand dollars, of which you are already in possession of the greatest part, is to be at your disposition and for your use, free of interest, during your natural life time, but after your death to be invested in bank stock, in the name of, and for account jointly and equally of the children of *Jeremiah L. Boyd.*

"All the money that may be remitted to you from *Rio de Janeiro*, by the house of *James Birckhead & Co.* for my account, is to be invested in *United States Bank* stock, to be held in the name of, and for the equal benefit of the children of my brother, *Jeremiah L. Boyd*, the interest to be appropriated annually towards their education, and the principal not to be divided until the youngest comes of age. Understanding this my wish, I trust you will comply with it most certainly, and by no means suffer any other appropriation of my effects. Hoping to be with you in forty-five days from this time, and improved in health, I remain your affectionate brother, *Wm. L. Boyd.*"

The defendant having been returned "*summoned*," and not having answered according to the rules of the court, an interlocutory decree passed, and an *ex parte* commission issued on the 17th October, 1831, to prove the allegations of the complainants' bill, in conformity with the act of 1820, *ch.* 161.

The only evidence returned with the commission was an attested copy of the will, and an account settled by the appellee with the Orphans court of *Baltimore* county, on the

1st March, 1832, in which, after charging himself with the amount of assets then in his hands, and taking credit for the $10,000 bequeathed to him by the testator for life, and a sum invested by him in *United States Bank* stock, in the names of the appellants, in pursuance of the directions of the will, there remained a balance in the hands of the appellee, as administrator, of $2092 62.

The cause without further proceedings was set down for final hearing in the court of Chancery, and at the July term of that court in the year 1832, *Bland,* Chancellor, dismissed the bill with costs.

From this decree the complainants appealed to the court of Appeals.

· The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Mayer* and *Flusser,* for the appellants, contended,

1. That the appellants were entitled to call on the defendant for security for the forthcoming of the fund at his death. 2 *Com. Dig.* 770. *Hyde vs. Parrat,* 1 *Pr. Wms.* 1. 2 *Roper on Wills,* 191–2. *Studholm vs. Hodgson,* 3 *Pr. Wms.* 300, 304. *Foley vs. Burnell,* 1 *Bro. Ch. Rep.* 274.

2. If however the defendant cannot be called upon for security, he can at all events be compelled to invest the fund.

3. The allegations of the bill in regard to the perilous condition of the fund are sufficient, and the account settled with the Orphans court sufficiently proves those allegations to be true. *Johnson vs. Mills,* 1 *Ves. Sr.* 283. *Hoare vs. Parker,* 2 *Durn. and East.* 376.

4. But in the case of a *pecuniary legacy,* an allegation of danger is not necessary. 1 *Jer. Eq.* 350, 351. *Green vs. Pigot,* 1 *Bro. Ch. Rep.* 105. *Johnson vs. Mills,* 1 *Ves. Sr.* 283. 1 *Cox's Ch. Rep.* 244. *Ferrard vs. Prentice, Amb.* 273. *Batten vs. Earnby,* 2 *Pr. Wms.* 163. 1 *Vern.* 189.

*Boyle*, for the appellee.

1. There must be a distinct allegation, and proof of danger to the fund, before the court can call for security from the legatee for life. *Foley vs. Burnell*, 1 *Bro. Ch. Rep.* 279. *Slanning vs. Style*, 3 *Pr. Wms.* 336.

2. In this case there is no evidence, either that *J. L. Boyd* is the guardian of the complainants, or that they are minors, or that the debts of the testator have been paid, or of the insolvency of the appellee, or danger to the fund; of all which he contended there should have been proof.

STEPHEN, J. delivered the opinion of the court.

*William L. Boyd* in the month of July, 1827, then being in a foreign country, and contemplating the possibility of his death before his arrival in the *United States*, addressed a letter to the defendant, (which has since been admitted to probate as a testamentary paper) in which is contained the following disposition of a part of his property. " Ten thousand dollars, of which you are already in possession of the greatest part, is to be at your disposition, and for your use free of interest during your natural life-time, but after your death, to be invested in bank stock, in the name of, and for account jointly and equally of the children of *Jeremiah L. Boyd*." The event of his death, of which he seemed to have had an apprehension, did occur before he returned to this country. The object of the bill filed in this cause was to obtain the interposition of the court of Chancery, to have this fund placed in a state of security, so that the legatees in remainder might have the benefit of it after the termination of the interest for life therein given as above to his brother. The complainants are stated in the bill to be infants under the age of twenty-one years, and sue by the said *Jeremiah L. Boyd* as their father and guardian. To this bill no answer was filed; but a commission was issued under which two exhibits only were returned, that is to say, the above mentioned letter, and an account returned to the Orphans court of *Baltimore* coun-

ty by the defendant, to whom letters of administration with the will annexed were granted. In this state of the proceedings, the case was submitted to the Chancellor, by whom the bill was dismissed with costs. The question to be decided by this court is, whether this decree of dismissal under the circumstances of the case was correct; or in other words, whether the complainants were entitled to the relief sought by their bill. It is to be observed in the first place, that there is a total absence of all testimony to establish several essential facts necessary to be proved in this case, to entitle the complainants to the relief prayed by their bill. In the first place, they claim to be relieved in the character of infants, suing by their father and guardian; of the fact of their infancy at the time the suit was instituted, there is not the shadow of proof. They claim the interposition of the equitable powers of the court in the character and capacity of infants, suing by their father and guardian as their next friend, (for as such for the purposes of this suit we are disposed to consider him,) and yet have offered no evidence of their right or title to assume such a standing in court: without a proof of this fact, we do not think it was competent for them to sue in that capacity; and even if the charge of the fund being in danger or peril, in the hands of the legatee for life be sufficiently made, (of which doubts may be reasonably entertained, as there is no positive averment of that fact,) there is not a particle of evidence to establish or sustain that allegation. That such an averment ought to have been made and proved, under the particular circumstances of this case, to warrant the interference of a court of equity, to place the fund in a different situation from that directed by the testator, we think but little doubt can be entertained. The legatee for life was the first object of his bounty; he manifestly reposed in him by the terms of his will the most unlimited confidence. The ten thousand dollars, the subject of the gift, were to be at his *disposition*, and for his use, free of interest during his natural life; and unless the complainants adduced some

proof that this confidence had been misplaced, or was like-
ly to be abused, and that their interest in remainder was
about to be placed in jeopardy, we do not think that a with-
drawal of the fund from his hands, or compelling him to
give security, would comport with the benevolent intentions
of the testator towards him. The language of the will is
peculiarly strong and emphatical; he was to have the use
and *disposition* of the property free of interest during his
life, and in the exercise of this right of limited ownership
over it, secured to him by the will, we do not think he
ought to be disturbed or controlled, unless the interests of
those who were the secondary objects of the testator's
bounty manifestly required it. In *Jer. Eq. Jr.* 349, 350,
it is said, "that formerly if personal estate was given to A
for life, and afterwards to B, the latter or his personal re-
presentatives might in all cases have obtained a decree to
compel the former to secure the same to him after his death,
but that the present practice, in ordinary cases, where the
property consists of specific chattels, is not to require the
defendant to give security unless there is well founded ap-
prehension of danger thereto, but merely to oblige him to
make out, sign and deliver to the plaintiff, or into the pos-
session of the court, an inventory thereof; when, however,
the property is not of a specific character, the practice is
somewhat different; for in the instance of a legacy payable
at a future time, in which it is frequently and most useful-
ly applied, this court will direct the amount thereof to be
paid into court, whether the period for payment be fixed or
uncertain, and will regulate the application of the proceeds
in the mean time, in such manner that justice may be done
between all the parties, and will thus interfere, although
there should not be any danger of loss from the misconduct
or misfortune of the defendant." The authorities referred
to in support of this principle, it is conceived, have no ap-
plication to this case; but were cases of legatees suing ex-
ecutors to have their legacies secured, and they were de-
creed to be secured, as declared in *Ambler*, 273, " on the

general rule of the court;" but no case has been found, where, without an allegation of danger or misconduct, a legatee for life, as in this case, has been decreed to give security on "the application of those having an interest in remainder; if there be such a case, it has escaped our researches." So in 2 *Kent's Com.* 285, Chancellor *Kent*, speaking upon the same subject says, "the interest of the party in remainder in chattels, is precarious, because another has an interest in possession; and chattels, by their very nature, are exposed to abuse, loss and destruction. It was understood to be the old rule in Chancery, that the person entitled in remainder could call for security from the tenant for life, that the property should be forthcoming at his decease; but that practice has been overruled. *Ld. Thurlow* said, that the party entitled in remainder could call for exhibition of an inventory of the property, and which must be signed by the legatee for life, and deposited in the court; and that is all he is ordinarily entitled to. But it is admitted, that the security may still be required in a case of real danger that the property may be wasted, secreted or removed." In *Roper on Leg.* 231, we find the following remarks, "it seems to have been the ancient practice of the court of Chancery to require the person entitled to the partial interest, to give security to or for the benefit of the legatee appointed to succeed him. The practice, however, became gradually altered as above stated, upon a conviction that requiring from the first legatee only an inventory of the property specifically bequeathed, was attended with more equal justice to both legatees. Besides, as the testator had thought proper to entrust the first legatee with a personal use of the articles for life, it was not for the court to destroy that confidence except under special circumstances. But if such circumstances be shown and proved, as would make it dangerous to trust the chattels in the hands of the first legatee, without taking a sufficient security, as in the instance of insolvency, such security will be required." He then adds, that

*Ld. Thurlow* had ruled that there ought to be *danger* in order to require security. It is true that where the bequest to the legatee for life is of a sum of money, the reason for requiring security from the legatee for life, may be stronger than in the case of a bequest of specific chattels; but we do not think, that the court ought to exercise an arbitrary power of requiring security in such a case, where the testator has required none, unless there be some evidence, that the responsibility of the legatee for life has been in some degree impaired or altered by a change of circumstances, since that confidence was reposed. In most, if not all the cases, where the security has been required, it has been where the fund was in the hands of the executors; in such cases the court will order the executors to give security, or in default to pay the legacy into bank, as was done in 2 *Dickens*. 568. So in *Ambler's Rep.* 273, the case was, a "bill for security of a legacy which the defendant, the executor, was to pay at the end of ten years from the death of the testator; and though no particular reasons were assigned, as wasting assets, or insolvency in defendant, yet decreed on the general rule of the court by *Sir Thomas Clarke,* master of the rolls, who sat in the absence of the lord chancellor. We think we should not conform to the plain and manifest intention of the testator in this case, by requiring the legatee for life to give security, unless there be some proof that the interests of the legatees in remainder are in danger, or in default thereof of ordering the fund to be taken out of his hands. It is true, he is in this case the administrator with the will annexed; but by his settlement with the Orphans court, the fund is placed in his hands as legatee, and in that capacity alone does he now hold it, and not in his representative character. During his life the entire and absolute interest in the money which is the subject of the bequest, is vested in him: he is clothed with no trust for the benefit of the complainants who have no right to have the fund invested for their use, until the expiration of his life estate. They have therefore no claim to the inter-

position of this court, unless they can show that by suffering the fund to remain in his hands, and in the language of the will, at his disposition, their residuary interests will be put in jeopardy. In such a state of things, if they should be made satisfactorily to appear, it would, no doubt, be the duty of this court to take the necessary steps to carry the intentions of the testator fully and completely into effect. But we think that according to the well established principles of equity, the complainants are entitled to the discovery, as prayed by their bill, of all such sums of money or property as may have come to the hands of the defendant, and that for the purpose of obtaining such discovery, the defendant should be compelled to answer their bill of complaint; we also think that the balance of two thousand and ninety-two dollars and sixty-two cents, admitted to be in the hands of the defendant, and unappropriated to the use and benefit of the children of the said *Jeremiah L. Boyd*, as well as any other money or property belonging to the estate of the late *William L. Boyd*, exclusive of the ten thousand dollars, which may appear to have come to his hands in the manner specified in the will, and which may not be necessary for the payment of debts, ought to be decreed to be invested for the benefit of the children of said *Jeremiah L. Boyd*, according to the provisions of the will of the said *William L. Boyd*. If, moreover, the complainants have any merits in their case, and are entitled to an indemnity against loss or injury, by reason of actual or impending danger, they will have an opportunity of evincing it by an amendment of their proceedings, and by furnishing the necessary evidence of that fact. For the attainment of that object, should the security of their interests require it, this court will pass an order remanding the case to the court of Chancery, where such measures may be adopted by the complainants, as justice and equity may require.

CASE REMANDED TO THE COURT OF CHANCERY.