Michael *vs.* Baker, Excx. of Michael.

## ISAAC MICHAEL *vs.* CAROLINE M. BAKER, EXCX. of CATHARINE MICHAEL.

By an *ante-nuptial* agreement, a wife was empowered to dispose of certain real and personal property, by will, and to hold and receive certain funds for her sole and separate use. HELD, that the orphans court were right in admitting her will to probate, as valid to pass real and personal estate, its form and attestation being sufficient, but were not required to decide what extent of property would pass under the will.

The orphans courts are courts of limited jurisdiction: they may take probate of wills disposing of real and personal estate, and where the will of a *mar-ried woman* is propounded for probate, the probate does not decide upon the *right of disposal*, but merely upon the *factum* of the instrument.

Where the will of a *married woman* having, by an *ante-nuptial* agreement, power to dispose of property by will, is offered for probate, the orphan's court will not look nicely into the power of the wife; the question whether the will is a sufficient execution of the power belongs to the courts of law and equity, and not to the orphans court.

Where a wife under an *ante-nuptial* agreement, is entitled to receive and hold certain funds to her sole and separate use free from the marital rights of her husband, such funds will pass by her will, though the power of dispos-ing of them may not be expressly conferred upon her by the agreement.

An *ante-nuptial* agreement, giving to the wife power to dispose of certain real and personal property by will, is not a testamentary paper, forms no part of her will and should not be admitted to probate.

APPEAL from the Orphans Court of Frederick county.

The appellee offered for probate in the court below, the will of Mrs. Catharine Michael, executed on the 26th of April 1856, whereby the testatrix, after some pecuniary legacies, devised and bequeathed "all the rest and residue of her estate, real, personal and mixed, to her daughter Caroline M. Baker, her heirs and assigns forever," and appointed the said Caroline her executrix.

This will was executed and attested in the usual form, to pass real estate, as if the said testatrix was a *feme sole.* She was however at the time of its execution and also at the time of her death the *wife* of the appellant, who filed a *caveat* to the will, insisting that it was utterly void for any purpose, because not executed according to the act of 1842, ch. 293, sec. 6, and the laws of this State; the testatrix being at the time a *married woman,* the wife of the caveator. To this caveat, the executrix filed an answer, insisting that the will was executed according to law, and under an *ante-nuptial agreement* entered into between the testatrix, then Catharine Baker, and Isaac Michael, the caveator, dated the 4th of March 1850.

This *ante-nuptial settlement,* (which was also filed in the court below with the will,) executed by both parties under their hands and seals, recites that a marriage is about to be solemnized between them and they have agreed to enter into the following covenants and stipulations. "*First,* the said Catharine Baker being possessed *in her own right* of money, *choses in action,* book accounts and other personal property, to the amount of $4250, doth hereby transfer, assign and convey the same to the said Isaac Michael, his executors, &c., and the said Isaac Michael, in consideration of the said sum of $4250, doth covenant and agree with the said Catharine Baker, her executors, &c., to pay to her the said Catharine during her life, notwithstanding her coverture, the annual interest accruing on the said sum of money annually in each and every year, *for her sole, separate and exclusive use and benefit, free from his marital rights,* and in case the said Isaac should die before the said Catharine, he, the said Isaac, doth

bind his heirs, executors, &c., to pay to the said Catharine, her executors, &c., the said sum of $4250, with any interest which may be due thereon.'' It was further stipulated, "that any receipt signed by the said Catharine, during her coverture for the interest, shall be as full and complete a discharge as if she were sole.'' It was further agreed that the said Catharine, *"shall be at full liberty to devise and bequeath the said sum of $4250, and any interest which may be due thereon, as if she were a feme sole, and that he the said Isaac will consent to any will or wills, or to any codicil or codicils, which she the said Catharine may make during her coverture with the said Isaac Michael, and that he will assent to the same in writing.* And in default of any appointment by any will or codicil, he, the said Isaac Michael, binds himself, his heirs, executors, &c., in the event of his surviving the said Catharine, to pay the said sum of money to any child or children which she may leave,'' equally among all, if more than one, share and share alike. It was also further agreed, "that the said Catharine shall during her coverture, *receive the rents and profits of the house and lot situated in Middletown,* now owned and occupied by the said Catharine Baker, *for her sole, separate and exclusive use;*'' and the said Isaac further agrees, "that the said Catharine during her coverture, may and shall have power to sell and convey said house, and invest the proceeds in such manner as she may direct, *for her sole, separate and exclusive use and benefit,*'' and he covenants to unite with her in any deed which may be necessary to convey title to the same, and agrees *"that the said Catharine may devise the said real estate or any other real estate which she may purchase during coverture, and may bequeath the proceeds of any sale of real estate to any person whom she may appoint,* and in default of appointment, that such real or personal estate shall descend to, and be distributed among, any children which she may leave if more than one, if only one child, that such child shall receive the whole personal estate and real estate, which she the said Catharine may leave.'' It was further stipulated that this agreement should not "debar the said Catharine Baker, from any right which she may acquire by virtue of her

intermarriage with the said Isaac Michael, either in the real or personal estate of the said Isaac."

The due execution of this agreement was admitted, and it was also admitted that the marriage took place between the parties thereto in March 1850, and that the paper offered for probate was executed by Mrs. Michael, as it purports, in the presence of three witnesses whose signatures are also admitted.

The case was tried before the orphan's court, and the *antenuptial agreement* being offered in evidence by the caveatee, it was objected to as incompetent evidence for any purpose, and inadmissible to prove that the will in question was made with the consent of the caveator, the husband, or in conformity with the act of 1842, ch. 293, sec. 6. This objection however the court overruled and admitted the agreement as evidence. The caveatee also offered in evidence, extracts from the assessment books of Frederick county, under the hand of the clerk of the county commissioners and seal of office, showing that Mrs. Catharine Michael stands charged thereon with "Real estate in the corporation of Middletown: House and lot valued at $1700; assessed 1853 $1700. In District private securities $4250;" also a receipt from the collector of taxes for said county, showing that the State and county taxes for the years 1856 and 1857, on the aforegoing property had been paid by said Catharine Michael. The admissibility of these papers was objected to by the caveator, but the objection was overruled by the court.

The court then passed an order admitting the will to probate, "as and for a valid last will and testament of said Catharine Michael, to devise and bequeath the real and personal estate of the said Catharine Michael," and also admitting to probate the said *marriage settlement*, and granting letters testamentary to the caveatee. From this order the caveator appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, and BARTOL, J.

21      v. 12.

*Wm. P. Maulsby* and *Jos. M. Palmer* for the appellant:

1st. The decree appealed from is manifestly erroneous, in admitting to probate the ante-nuptial contract, for the orphans court most certainly had no power or authority to decide as to the validity of this agreement, nor to admit it to probate, as it has not the slightest resemblance to a testamentary instrument, nor does the paper purporting to be a will in any way refer to it as the basis of the will.

2nd. The court also decided and decreed, that the paper purporting to be a will be admitted to probate as a valid last will and testament, to devise and bequeath the real and personal estate of the said Catharine Michael, without deciding upon what principle such judgment was given, or assigning any reasons for their determination. It is admitted that a married woman, in this State, may make a good and valid will of her own property real and personal, provided the will is executed in the manner required by the act of 1842, ch. 293, sec. 6, but this will was not so executed, and is utterly void then so far as the wife's own property independent of the power, is concerned. We shall not stop *here*, to examine the question as to what the rights of *feme coverts* were before the act of 1842, in relation to their separate property, either in England or this country. If the paper in question can be considered a valid will at all, in relation to the real and personal property specified in the power which the wife as a *feme covert* had a right to dispose of by will, it must be because it was made and intended to be made as a last will and testament, in execution of the power. The wife, when she executed this paper, must have done it with an express intention of executing the power by will, and that intent must appear clearly and distinctly from the face of the paper itself, and if that intent does not appear from the paper intended to be a will, the power is not executed. The question to be decided is, whether the wife has properly executed the power of appointment, not whether the husband has been guilty of a violation of his covenants and stipulations in the marriage contract. It is now well settled, that a *general devise*, however unlimited in terms, will not comprehend the subject matter of a power unless it refer to the subject

matter or to the power. 2 *Brown's Ch. Rep.*, 304, *Andrews vs. Emmot. 4 Kent*, 334. In the case of wills, it has been repeatedly decided and is now the settled rule, that in respect to the execution of the power, there must be a reference to the subject of it or to the power itself, unless it be in a case in which the will would be inoperative without the aid of the power, and the intention to execute the power becomes clear and manifest. If there be an interest and power existing together, in the same person over the same subject, and an act be done without a particular reference to the power, it will be applied to the interest and not the power. 4 *Kent*, 335. In this case the wife owned and held the fee of the land as well as the power to dispose of it by will. In *Lovell vs. Knight*, 3 *Simons*, 275, the words of the will were: "The whole of my property both real and personal, and whatsoever I may possess at the time of my decease," and the Vice Chancellor says, a will couched in such terms as that upon its face it appears to express an intention to pass the general property which may belong to the party making the will, shall not be deemed an execution of a power with regard to any specific property. The cases of *Jones vs. Tucker*, 2 *Mer.*, 533; *Webb vs. Honnor*, 1 *Jac. & Walk.*, 352; *Nannock vs. Horton*, 7 *Ves.*, 391, and *Buckland vs. Barton*, 2 *H. Bl. Rep.*, 136; all sustain the same general principle. In *Jones vs. Curry*, 1 *Swans.*, 67, the will not only contained no reference to the power nor to the subject matter of it, but was in terms expressly confined to the property of the testatrix, and the master of the rolls decided, that he was bound by the doctrine of the court to consider the will as confined to her own property, and not comprehending that over which she had a power. In the case of *Bradley vs. Westcott*, 13 *Ves.*, 446, the master of the rolls fully sustains the principles established in the case of *Andrews vs. Emmot*, and the other cases cited, and explains that of *Standen vs. Standen*, 2 *Ves. Jr.*, 589. *Best J.*, in *Nowell vs. Roake*, 2 *Bing.*, 497, and 5 *Barn. & Cress.*, 720, uses this strong language: "No terms however comprehensive, although sufficient to pass every species of property, freehold or copyhold, real or personal, will execute a power unless they

demonstrate that the testator had the power in his contemplation, and intended by his will to execute it." The whole question is one of intent which must be collected from the will itself. Judge Story, in *Blagge vs. Miles*, 1 *Story's Rep.*, 441, and Chancellor Kent, in *Bradish vs. Gibbs*, 3 *Johns. Ch. Rep.*, 535, sustain the same general principle contained in the cases referred to. The paper in this case purporting to be a will, was not executed according to the terms, true intent and meaning of the marriage contract; it does not profess to be an execution of the power but is in direct violation of it; the power provides the form and manner of its execution, and if not executed according to its terms, this paper cannot operate as a will. It is clear, that the intention of the parties was that the power should be executed by a will made as directed by the act of 1842, ch. 293, and if it had been so executed it would have been a valid execution of the power. A party *creating* a power, certainly has the right to fix the terms of its execution. The husband, in this case, never refused to aid and assist his wife in making a will in strict accordance with the power. He never was applied to for that purpose, and if he had been and had refused it, this would not have made the paper in question a valid will. He would perhaps have been guilty of a breach of covenant, for which a court of chancery might have interposed its aid if applied to, but such a question is not now before the court. He covenants that he will permit his wife to make a will, and that he will assent to it in writing, and in the same contract he also covenants to join her in a deed conveying her real estate. Now suppose a deed had been executed by the wife without the husband's joining her as provided by the power, would it have been good? and how can we discriminate such a case from that of executing a will without the assent of the husband as provided by the same power? It is for these reasons submitted that the power is not executed, and therefore that the decree of the court below is erroneous.

3rd. But the appellee's counsel say that the caveator, the surviving husband of the testatrix had no right to file a *caveat* to this paper, upon the ground that he has no right or interest

Michael vs. Baker, Exex. of Michael.

in the personal estate of his deceased wife, or of the settlement thereof, having abandoned and released all right and control over it by the marriage contract, and to sustain this position they refer to *Ward vs. Thompson*, 6 *G. & J.*, 349; *Maurer vs. Naill*, 5 *Md. Rep.*, 324, and other cases, as conclusive of this question. We are not able to perceive the analogy between these cases and this. The marriage contract in this case, has not the slightest resemblance to those in the cases referred to. In *Ward vs. Thompson*, the contract was, that all the property of every description, which the intended wife was then entitled to or might thereafter become entitled to, should be and was conveyed to trustees for her use and benefit. No such provision or any thing like it is contained in this contract. The caveator here did not give up the right to any of the property of his intended wife during coverture, except the interest on the $4250, and the rents of the house and lot in Middletown. The surviving husband is, also, by the act of 1798, ch. 101, sub-ch. 5, sec. 8, the administrator of his deceased wife, without letters, and under the facts and circumstances of this case had an unquestionable right to file the caveat. 1 *Phillimore*, 254, *Moss vs. Brander*. 1 *Hoff. Ch. Rep.*, 12, *Heyer vs. Burger*. 7 *Johns. Ch. Rep.*, 229, *Stewart vs. Stewart*.

*Wm. J. Ross* and *Richard H. Marshall* for the appellees.

1st. The paper offered for probate in this case is a will of a married woman, made in pursuance of a power vested in her by an ante-nuptial contract. To render appointments under such a will available, a *probate* of the will is necessary. 1 *Wms. Exers.*, 42. 3 *Atk.*, 160, *Ross vs. Ewer*. 9 *Ves.*, 369, *Rich vs. Cockell*. 2 *Roper on Husband & Wife*, 189. The purpose of the probate is only to confirm judicially the testamentary nature of the paper offered for probate. It can be proved without the consent of the husband, as it is limited to the property embraced in the power. 1 *Sugden on Powers*, 185, sec. 3. 2 *Roper on Husband & Wife*, 189. 1 *Phillimore*, 352, *Tappenden vs. Walsh*. *Ibid.*, 254, *Moss vs. Brander*. The spiritual courts in England are authorised to pro-

bate mixed wills of real and personal estate, (1 *Wms. Excrs.*, 238,) and in Maryland, the orphans courts are authorised to probate wills of real as well as personal estate, *(act of* 1831, *ch.* 315.) But the ecclesiastical courts will not look *nicely into the question, whether the appointment is authorised by the power,* as the grant of probate does not determine the question, but leaves that open for the decision of the temporal courts. 1 *Phillimore,* 352. 1 *Curteis,* 286, *Ledgard vs. Garland.* The probate, as is established by all the authorities, settles nothing but the testamentary character of the appointment, so that the appointees may assert their rights under the appointment in the temporal courts. In this case the record contains full proof of the power and of the testamentary character of the paper offered for probate, in execution of the appointments authorised by the power. If these positions are sound, then the order of the orphans court admitting the will to probate is correct, and must be affirmed without any further examination or consideration of the case. But if this view of the case should be regarded as erroneous, and in the judgment of this court it is material to proceed further, with a view of ascertaining whether the appointing power has been duly exercised, then it is insisted:

2nd. That the husband, the caveator, can have no standing in court, which entitles him to interpose a *caveat* to the probate of this paper. The will cannot operate upon any other property than that contained in the power, or that which the wife held to her separate use. 1 *Wms. Excrs.*, 42. 11 *Md. Rep.*, 492, *Cooke vs. Husbands.* By the terms of this power, the wife is authorised to dispose of that property by last will and testament, and in case of her death without a due exercise of her disposing power, the property is limited over to her child or children as the case may be. In no event can the caveator have any interest in the property contained in the power. The wife left a daughter to whom the property passes, in case of a non-execution of the power. The case of *Maurer vs. Naill,* 5 *Md. Rep.*, 324; *Ward vs. Thompson,* 6 *G. & J.*, 34; *Waters vs. Tazewell,* 9 *Md. Rep.*, 291; *Hutchins vs. Hooper,* 11 *Md., Rep.*, 29, and *Rex vs. Bettesworth,* 2 *Strange,* 1111; are conclusive on this point.

Michael *vs.* Baker, Excx. of Michael.

3rd. That the paper offered for probate, is a good and valid execution of the disposing power vested in the wife by the ante-nuptial contract. This power authorises the wife to will and bequeath all the property contained in the power by her last will and testament. The paper offered for probate as her will, is fully proved to have been executed by her as her will, and is in due form of law, to devise and bequeath real and personal property in Maryland. There can be no well founded objection as to the *quo modo* of disposition, for it is strictly in the mode pointed out in the power. The only question then is, did the wife mean to execute the power vested in her by the marriage contract, when she made and executed this paper? Questions of this kind, like all other questions on wills, depend upon intention. If this satisfactorily appears, it is all that is required. It is not necessary that the intention *should* appear in *express terms* on the face of the instrument, nor that the power should be referred to. The intention to execute the power however manifested, whether directly or indirectly, or by just implication, is sufficient to make it valid. 4 *Kent*, 335. 3 *Johns. Ch. Rep.*, 551, *Bradish vs. Gibbs.* 1 *Story's Rep.*, 426, 446, *Blagge vs. Miles.* 9 *Simons*, 443, *Curteis vs. Kenrick.* 16 *Eng. Ch. Rep.*, 447, *Churchill vs. Dibben, (note.)* In all cases, a will will operate as an appointment under a power, provided it can have no operation without the power. In the case of a married woman having a testamentary power, and making her will, it must be intended to be an exercise of the power, though it contains no reference to it, because the will of a married woman can operate in no other way than as an exercise of her power. See cases already cited on this point, and 1 *Sugden on Powers*, 419 to 451, where all the authorities are brought together, and 1 *Hoff. Ch. Rep.*, 2, *Heyer vs. Burger.*

4th. The certificate of the clerk of the commissioners of the tax under the seal of that court, is evidence of what the commissioners' books contain, (1 *Greenlf. on Ev.*, secs. 493, 484, *et seq.*; 2 *Md. Ch. Dec.* 186, *Hughes vs. Jones;* 16 *Eng. Ch. Rep.*, 447,) and from this certificate and the receipts of the collector of the tax, it is clear the wife, at the time she exe-

cuted this paper, had no other property but that contained in the power, and they conclusively show that she meant to execute her power. The residuary clause wills and bequeaths all the rest and residue of her real and personal estate to her daughter. She had no other real property but that contained in the power. She must, as a necessary consequence, have meant to refer, in this clause, to the real estate, and by classing with it all her personal estate in like condition, she clearly shows what personal property she meant to bequeath. She could have meant no other personal property but that contained in the power, and in the same condition of the real estate which she clearly devised. In any view of the case, her will could only operate as an execution of her power, and her intent to execute it clearly appears.

The order appealed from is admitted to be erroneous, in so far as it admits to probate the marriage contract.

BARTOL, J., delivered the opinion of this court.

The only question presented by this appeal is, whether the paper purporting to be the last will of Catharine Michael, is entitled to be admitted to probate, as a valid disposition or appointment.

At the time of its execution the testatrix was a married woman, and continued so till the time of her death; the will was not made and attested in conformity with the provisions of the act of 1842, ch. 293, and is not entitled to be admitted to probate, unless the same was made in virtue of her rights under the ante-nuptial agreement between her and her husband the caveator.

Many cases have been cited to show the principles, by which courts in England and in this country have been governed, in deciding upon the construction of powers and their execution. We have examined them carefully; but in our view of the case before us, it is not necessary for its determination, to review the various decisions to which our attention has been directed.

The case comes before us on appeal from the orphans court for Frederick county, which is a court of limited jurisdiction. It is authorised under the act of 1831, ch. 315, to take probate of wills disposing of real and personal estate.

In considering this case, that court must be treated simply as a court of probate.

In *Tappenden vs. Walsh,* 1 *Phillimore,* 352, where the question was on admitting to probate the will of a married woman, it is said, "by the law as it stands at present, a married woman who possesses separate property, may dispose of it without the consent of her husband. The probate of this court does not decide upon the right of disposal, it decides merely on the *factum* of the instrument; perhaps if no probate were granted by this court, the person to whom the property is left might be unable to recover it." And in the same case the learned judge refers to the case of *Bowes vs. Bowes,* decided in 1801, when it was laid down as the law governing the ecclesiastical court in such cases, "that it would not look nicely into the power of the wife, as that right belonged to another court." That rule we consider as applicable to the orphans courts in Maryland, and in reviewing their judgment passed in this case, as an appellate tribunal, it is unnecessary to express any opinion as to the extent to which the powers vested in the testatrix under the agreement, may have been executed by her will. Such questions belong properly to the courts of law and equity, which are vested with ample jurisdiction to hear and determine them.

In this case the ante-nuptial agreement, which was produced before the orphans court, the execution of which was admitted, abundantly showed that Mrs. Michael was empowered to make a will notwithstanding her coverture. Besides it appears from the agreement, that she was entitled to receive and hold absolutely to her sole and separate use, free from the marital rights of her husband, certain funds specified in the agreement. Under her will, such funds would pass, although the power of disposing of them may not be expressly conferred upon her by the agreement. This is the well established doctrine in England, and it is now settled law in Maryland; see *Cooke vs. Husbands,* 11 *Md. Rep.,* 492, and the authorities there cited.

The agreement also shows, that Mrs. Michael had a power to dispose, by will, of certain real estate therein mentioned. Whether the will is a sufficient execution of that power, is not

v. 12.

a question which the orphans court was called upon to decide. The form and attestation of the will are sufficient to pass such real estate, provided it is to be construed as an execution of the power.    Without expressing any opinion on that question, we think the orphans court decided correctly, in admitting the will to probate, as a valid testamentary paper, to pass real and personal estate; but they were not required to decide what extent of property would pass under the will.

The court erred in admitting to probate the articles of agreement, they are not a testamentary paper, and form no part of the will.

In order that the order of the orphans court may be corrected, and made conformable to the opinion of this court, the cause will be remanded.

*Cause remanded.*

(Decided June 22nd, 1858.)