# THE VESTRY OF ST. JOHN'S PARISH

*v.*

# BOSTWICK.

---

**WILLS, INCORPORATION OF EXTRINSIC DOCUMENTS INTO ; PROBATE ; TESTAMENTARY INSTRUMENTS.**

1. The attempted establishment by a testator of a charitable home to be placed in charge of a certain church, gives the vestry of that church, acting for the corporation, sufficient interest to bring to the attention of the probate court the instrument creating the charity and to ask its probate ; or to ask for the review and rescission of an order refusing probate, where they were not parties to the original proceedings.

2. Where a will devises and bequeaths property in trust and recites that the trusts are set forth in a written instrument prepared by the testatrix, and although such written instrument is at its head dated the day previous to the date of the will, its concluding paragraph indicates that it was not executed until two months after the date of the will, such written instrument cannot be considered part of the will.

3. Nor will a paper-writing executed by the testator subsequently to the date of the will and attempting to devise real estate, but which is invalid because of an insufficient number of witnesses, by reference to such written instrument be such a republication of the will as to make such instrument a part of it.

4. But if such written instrument is a paper of testamentary character, it is as an independent instrument, affecting personal property only, entitled to probate.

5. It is the province of a probate court to determine only the testamentary character of a paper and its admissibility or inadmissibility to probate, but not to construe such paper.

No. 524.  Submitted April 7, 1896.  Decided May 5, 1896.

HEARING on an appeal by the petitioners from an order of the Orphans' Court dismissing a petition to review a previous order of that court refusing to admit to probate a certain paper-writing claimed to be part of a will.  *Reversed.*

The COURT in its opinion stated the case as follows:

Mrs. Anna M. Maulsby, a widow lady, and at the time of her death a resident of this District, died on the 30th of July, 1892, leaving a will duly executed to pass both real and personal estate, and several other papers of a testamentary character, though attested only by one witness, and therefore insufficient to pass real estate.  The deceased left a considerable estate, both real and personal, but left no issue or descendants.  She left surviving her one sister, and a niece Ida Corson, and a nephew and several nieces, the children of a deceased brother.

The will and the several testamentary papers were filed for probate by Mrs. Charlotte Bostwick, the surviving sister and executrix named in the will, but she renounced the appointment as executrix, and the Supreme Court of this District, holding a special term for Orphans' Court business, passed the following order thereon:

" *In re Estate of Anna M. Maulsby. No. 5213.*

" This matter coming on to be heard upon the petition of Charlotte Bostwick, and due execution of the paper-writing of date November 30th, 1886, as a will of realty and testament of personalty, and of the paper-writings of dates respectively May 23d, 1889, June 22d, 1889, and March 23d, 1892, as testaments of personalty, having been proved by the depositions of the attesting witnesses thereto, it is this 28th day of October, 1892, adjudged, ordered, and decreed that said paper-writings respectively be, and they are hereby, admitted to probate and record as hereinbefore specified ; that letters of administration *c. t. a.* issue to Louisa D. Lovett and Ida Corson upon said estate upon their giving bond in due form, with sufficient sureties, to be approved by the court, conditioned in the penal sum of five hundred dollars ($500.00), for the faithful performance of their duties as such administratrices.

"And the court being of opinion that the paper-writing dated November 29, 1886, being the ' written instrument ' referred to in said will and filed therewith, is not a part of said will, it is ordered, adjudged, and decreed that probate of said last-mentioned paper-writing be refused, and the register of wills is directed to return said paper-writing to said Louisa D. Lovett and Ida Corson, taking their receipt therefor.

"A. C. BRADLEY, Justice."

It appears that this order was made by the court without any objection on the part of the heirs at law and next of kin of the deceased, and it does not appear that any notice whatever was given to any persons who might have been interested in having the " written instrument " referred to in the will admitted to probate ; and the surviving executrix having withdrawn, there was no one in court to maintain the " written instrument."

By the will, the testatrix devised and bequeathed to her two sisters then living, Charlotte Bostwick and Emma L. Breese, or either surviving, after payment of debts and

funeral expenses, all of her estate, real, personal and mixed, *in trust*, but did not declare any particular trusts in the will. She appointed her two sisters, or either of them, executrices of her will; and she further declared, that in case of the death of both of her sisters, before her wishes to them made known should have been carried out, she gave, devised and bequeathed to her nieces, Louisa D. Lovett and Ida Corson, all her estate, real, personal and mixed, *in trust*, enjoining upon them *to carry out her wishes expressed in* the " written instrument" by her to them, as soon as conveniently might be, and she constituted and appointed both of them, or either surviving, executrices of said last will and testament, revoking and annulling all former wills by her made. And the testatrix declaring her entire confidence in the ability and integrity of the executrices named by her, she requested that they be not required to give bond for the faithful performance of their trust. She further declared that " in case of the decease of all the executrices herein named, I appoint the Fidelity Insurance, Trust and Safe Deposit Company of Philadelphia, executors to carry out *my wishes as expressed in the written instrument heretofore mentioned.*"

It thus appears that the principal plan and purpose of the testatrix in the disposition of her estate, was embodied and expressed in the " written instrument" referred to in the will.

The testamentary paper, dated the 23d of May, 1889, admitted to probate as to the personal estate, and referred to in the order of court, related only to the real estate that might thereafter be acquired; and the proceeds of the sale of which were directed to be disposed of according to the instructions in the " written instrument" theretofore mentioned. This instrument of the 23d of May, 1889, relating exclusively to real estate, is wholly ineffective, because not executed according to the requirements of the statute.

The sister, Emma L. Breese, having predeceased the testatrix, and the other sister, Charlotte Bostwick, having

declined to take letters testamentary upon the estate of the deceased, letters of administration *cum testamento annexo* were granted to Louisa D. Lovett and Ida Corson, according to the recommendation of the renouncing executrix, and they were required to give bond, as stated in the order of court.

The "written instrument" referred to in the will is signed by the testatrix, but is attested but by a single witness, and is addressed to the sisters of the testatrix. At its head it is dated the day before the date of the will; but it commences by saying: "By my will, *recently made*, I leave in trust to you both, the whole of my property, feeling assured that you will faithfully carry out my wishes in disposing of it as I will herein direct." But in the conclusion of this "written instrument," containing her directions, it is declared that "This is the 'written instrument' mentioned in my last will and testament, as expressing my wishes regarding the disposition of my property—Whereunto I set my hand and seal this twenty-sixth day of January, in the year of our Lord one thousand eight hundred and eighty-seven;"—nearly two months after the date of the will.

While the head date would indicate that the "written instrument," referred to in the will, had been commenced the day before the date of the will, yet from the context and the conclusion of the paper, it clearly appears that it was not a determinate instrument, and actually signed, until nearly two months after the date of the will.

The "written instrument," thus referred to, and which was rejected by the court below as not being *a part of the will* of the testatrix, is a declaration of the uses and trusts upon which her estate was devised and bequeathed to her executrices, and if that instrument be rejected, the whole purpose and scheme of the will must be defeated.

This "written instrument," referred to in the will, declares the purpose and desire of the testatrix to erect a memorial to her mother, and to make it a home for desti-

tute women, who, either from age or infirmity, are unable
to support themselves, and are without friends to assist
them. "I wish this 'home,'" says the testatrix, "to be
placed in charge of St. John's Church, and managed by
ladies elected for that ·purpose, as is the 'home' for a
similar purpose now connected with the Epiphany Church."
"The site of this 'home' must be somewhere on the land
of 'Kalorama.' I would name Ida Corson as trustee also,
assisted by some of the vestrymen of St. John's Church."
She leaves in trust, by the "written instrument," $35,000
for the purchase of land at "Kalorama," and for the erec-
tion of a suitable building; and $45,000 to be invested, to
assist in maintaining the establishment. She also leaves
her pew in St. John's Church to this "home," and a sum
to be invested to pay the annual rent for the same. She
gives power to her executrices to purchase part of certain
property for a building site for the "memorial home," and
likewise power to sell any portion of her land at Mount
Airy, Philadelphia, and in the city of New York.

This "written instrument" contains many other direc-
tions and bequests, but which are not material to the ques-
tion presented on this appeal.

Some time after the passage of the order refusing pro-
bate to the "written instrument," referred to in the will,
the vestry of St. John's Church or parish, a corporation of
this District, and which had not been a party to any previ-
ous proceedings in respect to the probate of the will and
codicils of the deceased, filed a petition, stating all the
facts and proceedings of the case, and by which it prayed
that the court would review its previous order, and that so
much of the decree or order of the 28th of October, 1892,
as relates to the said "written instrument" be rescinded;
"and that the administrators *cum testamento annexo* be
required to file the original of the said 'written instrument'
in court, and that, on their doing so, the petitioners be al-
lowed to produce evidence of the due execution of the said
paper, and that the same be admitted to probate as the

testament of the deceased of her personal property, and, to that end, that citations may issue," etc.

This petition was answered and the prayer thereof resisted upon several grounds :

1st. That the petitioners have no such interest in the subject-matter as to entitle them to ask for the rescission of the previous order, or for the probate of the paper thereby rejected.

2d. That such an application as the present is not authorized by any known practice of a probate court ; and,

3d. That the previous order of the 28th of October, 1892, refusing probate of the " written instrument " was correct, and that it is conclusive upon all parties concerned.

The court below dismissed the petition, but assigned no reasons therefor, and from the order of dismissal this appeal is taken.

*Mr. James Lowndes* for the appellant :

The decree of October 28, 1892, was wrong in two particulars, and should have been corrected : 1st, it was wrong in deciding that the " written instrument " was not a part of the will of Anna M. Maulsby and a good will of personalty ; 2d, in deciding that issue without notice to the appellant or to any person interested in maintaining the charitable trust for a memorial home.

1. By the decree of October 28, 1892, the court decided that the " written instrument is not a portion of the will of Anna M. Maulsby ; " and in the decree of November 9, 1895, directed that the petition in this case for the review of the former decree be denied and the petition dismissed. This decision is in effect a decision that the so-called written instrument is not in substance a testamentary disposition. No question can arise as to the form of the " written instrument " as a will of personalty, inasmuch as no form of wills of personalty is prescribed in the District of Columbia. The only question as to " the written instrument " presented in

these proceedings is, whether or not it is in substance a testamentary disposition.

The importance of this question will be apparent when it is observed that the will of Mrs. Maulsby makes no disposition of the equitable interest in her estate. It disposes only of the legal estate in her property. She bequeaths it to her sisters "in trust," thereby excluding the equitable interest of the property from the bequest to them. The testatrix, therefore, died intestate as to the equitable interest in her property, if the will of the 30th of November, 1886, is her only will, and her distributees must take the property. Perry on Trusts, Sec. 157. Intestacy can be avoided and the charitable trust sustained only by giving effect to the "written instrument."

The written instrument is a testamentary disposition of the equitable interest in the testatrix's property. It has all of the elements of a sufficient will of personalty. It is an explicit expression of her will as to the disposition of her property after her death. It does not purport to dispose of it in her lifetime. It is categorical and not in the slightest degree precatory. This "written instrument" comes within every definition which has ever been offered of a will. Williams on Executors, book 1, ch. 2 ; Jarman on Wills, vol. 1, p. 18 (6th Amer. ed).

In the case of *Byers* v. *Hoppe*, 61 Md. 200, the following was declared to be a will : "And after my death you are to have forty thousand dollars. This you are to have, will or no will." So in the case of *Cover* v. *Stemm*, 67 Md. 449, the following was admitted to be a will : "At my death my estate or my executor pay to J. A. C. three thousand dollars."

Many cases sustaining the definitions above cited will be found in the text-books : Jarman on Wills, vol. 1, p. 18–24 ; Williams on Executors, vol. 1, pp. 87–89.

It was suggested in the court below that probate of the written instrument was unnecessary, and it was said that the court of construction could give effect to its provisions with-

out probate of it, on the ground that by the reference to it in the original will it had become incorporated therein. It is not necessary to consider whether or not in any case probate of a document purporting to be a will of personalty can be dispensed with. It is certainly the general understanding in the United States that probate courts have exclusive jurisdiction of determining the *factum* of a will of personalty, and a separate document referred to in the principal will is as much a part of the *factum* as the principal will itself. If there is a reference to an extrinsic document, it is an issue of fact whether the document presented is the one referred to. The reason for a judgment by a probate court is especially important where, as in the present case, the document referred to is not merely descriptive or explanatory, but contains the will of the testator. There is besides, no reason for resorting to the reference to give validity to this document, which can stand by itself as a good will. It will probably be found that the cases in which the documents referred to in a will have been enforced by a court of construction are generally cases in which the documents could not stand as independent wills and were not entitled to probate as such. On the very threshold of this case a difficulty would arise in the court of construction in deciding whether the written instrument is the written instrument referred to. But a complete answer to the objection to probate made in the court below is, that the petitioner is entitled to probate whether or not probate is necessary. All persons interested in a will are entitled to have it passed upon and adjudged by the court of probate. If in any case probate can be dispensed with, that is the privilege of the parties interested in the will. See Maryland Act of 1798, ch. 101: Ibid, sec. 3.

The right to probate is in this jurisdiction a statutory right. No case can be found in which a court of probate has declined to take jurisdiction of the proof of a will on the ground that it was unnecessary. Jarman on Wills, vol. 1, p. 133; Amer. & Eng. Ency., vol. 19, p. 176.

In *Allen* v. *Maddock*, 11 Moore, P. C., 427, an insufficiently executed codicil was admitted to probate. In *Newton* v. *Seaman's Friend Society*, 130 Mass. 91, the court admitted to probate a book in which the testator had recorded his wishes, and to which he had referred in his will. In *Goods of Durham*, 3 Curt. Eccl. 57, a revoked will of a third person referred to in a will was admitted to probate.

In the present case a special reason exists for taking jurisdiction of the " written instrument," viz., that the Orphans' Court has decided that it is no part of the will of Anna M. Maulsby. Such an adverse judgment would render it impossible for a court of equity to give any effect to the paper, whatever it might have done in the absence of such a judgment. Any person interested in a will has the right to apply for probate of it. *Stebbins* v. *Lathrop*, 4 Pick. 42 ; 1 Williams on Executors (Amer. ed.), 311. In this case a charitable trust is created by the written instrument, and the petitioner is designated to execute it. This would seem to be a bequest by implication to the petitioner. But even if this be not so, it is eminently proper that the petitioner should bring the matter to the attention of the courts.

2. The order of the 28th of October, 1892, denying probate to the written instrument was void, or at least erroneous, because no opportunity was given to the principal legatee to be heard in support of the written instrument. The proceeding was entirely *ex parte.*

*Mr. John Ridout* for the appellees :

1. The appellant has no such interest as to entitle it to attack the decree complained of. Upon examination of the " written instrument," it will appear that there is no gift to the corporation nor any expression of a wish that the home for destitute women, referred to therein, is to be under the management of the vestry of St. John's Church, but it is apparent that Mrs. Maulsby intended the principal management of the home to be in the hands of Miss Ida Corson

and other ladies, members of the congregation of St. John's Church, and some of the individual members of the vestry of that church. It is settled doctrine that application for probate of a will can be made only by some person entitled to an interest thereunder, and the interest must be sufficiently substantial to amount to a property right. The application cannot be made by a mere volunteer who may conceive that on general principles it would be desirable that an instrument should be established as testamentary in its character. It follows that inasmuch as the appellant had no right to apply for probate of the "written instrument," it had no standing to file a petition to review the decree refusing probate thereof.

2. A bill or petition of review is unknown in the practice of the probate branch of the Supreme Court of the District of Columbia, and an order overruling a motion for rehearing is not appealable. The case cited by the appellant of *Mauro* v. *Ritchie*, 3 Cr. C. C. 147, is not authority in support of the right to file a bill of review to attack a decree of the Orphans' Court. That case decides that there being no terms of the Orphans' Court, a petition for rehearing may be filed after a lapse of time which with reference to a decree in equity would defeat the right to file such petition. The petition filed by the appellant below must be considered as an application for a rehearing, and the refusal to grant the same is not appealable.

On the other hand, if it be contended that the question of the jurisdiction of the court below can be inquired into on this appeal, the appellant was not entitled to notice under the practice of the court below, which only requires notice to the next of kin ; nor was the appellant so entitled as a matter of right, because of its want of any property right under the will. Even if entitled to notice, the appellant's remedy is not that which has been resorted to, because if its contention in this regard be correct, it may disregard the adjudication and apply for probate.

3. The decree below was not erroneous. The question

whether papers referred to in a will shall be admitted to probate is largely one within the discretion of the court. The doctrine on the subject is thus stated by Mr. Jarman : " There is no necessity for so proving it, in order to bring it within the cognizance of the court for construction ; for if it is not proved, the court will look at the original document." 1 Jarman (6th ed.), 133. See also 1 Redfield on Wills, page 261.

In the case at bar, the record shows that the paper referred to bears date, so far as the execution of it is concerned, January 26, 1887, while the will bears date November 30, 1886. The will also speaks of the " written instrument " as addressed to the testatrix's *nieces,* while the paper relied on by the appellant is addressed to her *sisters.* The language of the " written instrument " shows that Mrs. Maulsby did not intend it to be treated as part of her will, in so far that it should be recorded therewith, but the paper is simply intended as a private expression of her wishes to her sisters. The court below was therefore not only at liberty to decline, but abundantly justified in declining, to admit the " written instrument " to probate.

4. The decree below ought not now to be interfered with. The decree complained of was passed October 28, 1892. The so-called petition for review was not filed until March 16, 1894. In the meantime the " written instrument " had passed out of the control of the administratrices and Mrs. Bostwick, and had been filed in the Orphans' Court in Philadelphia beyond the control of any of the appellees. The estate has been settled and distribution made. An equity suit had been filed and the answer to the petition of review alleges that it is pending. If the appellant has any property right in the premises it has ample remedy to assert it by a bill in equity for the enforcement of the trust alleged to have been created by the " written instrument."

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. With respect to the first ground of objection taken to the granting of the relief prayed, we think it cannot be sustained. While the vestry of St. John's Church may not have a legal interest in the subject-matter involved, it clearly has such parochial interest in the charity placed in its charge as to entitle it to bring to the attention of a probate court the instrument in question, and ask for its admission to probate. Any interest, however slight, and even, it seems, the bare possibility of an interest, is sufficient to entitle a party to oppose a testamentary paper (1 Wms. on Exrs. 285); and for like reason, such interest entitles a party to insist upon probate.

2d and 3d. The second and third grounds of objection may be considered together. And as to the right of the petitioners to ask for the probate of the paper, notwithstanding the previous order of the 28th of October, 1892, we think there can be no doubt. As we have seen, the petitioners were not parties to the previous order or to the proceedings upon which it was founded, nor had they any notice of such proceedings. There was no contest or litigation as to the right of parties interested to have the paper admitted to probate; and the order refusing probate appears to have been passed by the consent, or at least without objection, of the heirs at law and next of kin of the deceased—parties directly interested in having the "written instrument" declared against as not being a part of the will, or as not being entitled to probate as an independent paper to affect personal property. There is no doubt of the general principle, that a legatee cannot set up a will or codicil, after it has been put in *contest and litigated* between the executor and next of kin, or between the executor and the executor of another will, and pronounced against, unless he can show that the parties agreed to set aside the will by fraud or collusion, or that there has been such neglect or misman-

agement in the conduct of the proceedings, as to operate to the prejudice of the legatee. 1 Wms. on Exrs. 286. If such be the case, the court will not deny the legatee the right of having the paper repropounded for probate. *Hayle* v. *Hasted*, 1 Curt. 236, 240–250. Here there has been no contest or litigation in regard to the right of this paper to be admitted to probate ; and upon no principle of justice, therefore, ought those interested in the probate of the paper to be precluded by the order of the 28th of October, 1892, if upon any ground the paper be entitled to probate.

It is certainly a well-settled principle in the law of wills, that a testator may so construct the disposition of his property as to make it necessary to have recourse to some paper or document in order to explain his intention, and to apply the provisions of his will to the subject-matter thereof. This is done by virtue of the principle of incorporation of the paper or document referred to into the will as part thereof; the will, in all other respects, being duly executed and attested as required by the law. In such case, the proof of the will sets up and establishes the paper referred to as a portion of the will itself, by force of the reference and the consequent incorporation. 1 Jarm. on Wills (5th Am. ed.) 228 to 231; 1 Redf. on Wills, 263, 264. Whether the extrinsic paper or document professes on its face to be testamentary or not would seem to be immaterial ; as its claim to be considered as part of the will is founded, not on its own independent efficacy, but on the fact of its adoption by the duly attested and formally executed will. It must, however, be clearly identified as the instrument to which the will refers, to entitle it to be considered as part of the will, and it must, moreover, be in existence at the date of the will. In this respect there should be no ambiguity. Therefore, a reference to a document as " made or to be made " gives strong ground for concluding that the document had not already been made ; and so a reference to persons or things "hereafter named," or to " the annexed schedule," is not so clear a reference to

any document as then existing as to incorporate writings that follow the signature of the testator and of the witnesses, although it be proved that, in fact, such writings were in existence before the will was executed; much less if the evidence on this last point is doubtful.   1 Jarm. on Wills, 230.   "But," says Mr. Jarman, "although the document was written after the execution of the will, it may be incorporated if the testator afterwards executes a codicil, for the codicil republishes the will, and makes the will speak from the date of the codicil.   The will must be so worded that, so speaking, it shall refer to the document *as then existing.*" 1 Jarm. on Wills, 230.

As illustrative of the principle of incorporation of extrinsic documents by reference, and the effect thereof, we may refer to the case of *Quihampton* v. *Going*, 24 W. R. 915, and as stated in the text of Jarman, to the effect, that where a testator referred to certain entries he had made in his ledger, as explaining his will, Sir George Jessel, M. R., held that the ledger was incorporated with the will, and, though *not admitted to probate*, could be looked at by a court of construction, and that the entries therein were for the purposes of distribution of the estate conclusive; that is to say, the entries were treated by the learned master of the rolls *as part of the will*, and not merely as evidence.   1 Jarm. on Wills, 231, 232.   In that case the entries were clearly referred to as existing at the date of the will.

In the case of *Singleton* v. *Tomlinson*, 3 App. Cas. 404, the testator died on the 27th of October, 1872, and the will was proved in the probate court on the 28th of December, 1872, but the grant of probate was confined to the three sides of the sheet of paper, *and was refused probate as to the fourth side thereof*. That fourth side contained a writing headed "Schedule referred to within," being a schedule of the testator's landed property. It was signed by him, and bore the same date as the will, but was not attested. On that state of case, without laying any stress whatever upon the fact that the fourth side of the sheet of

paper had been refused probate, the House of Lords held, that where a will refers to a paper, such paper cannot be incorporated with the will, unless it is clearly identified with the description of it given in the will, and is shown to have been in existence at the time the will was executed. Both these matters must be established, and though there may be no doubt about the former, unless the latter is also proved there can be no incorporation of the paper with the will for such a purpose ; and the *onus* of establishing these two facts lies on the person who seeks to make the paper admissible for such a purpose.

In the case now before us, though the head date would indicate that the " written instrument " had been prepared the day before the date of the will, yet the context of the will, and the concluding paragraph of the " written instrument " itself, would seem to make it clear beyond doubt that the " written instrument," though in contemplation of the testatrix at the time of making the will, was not completed and made a definitely concluded instrument, until nearly two months after the date of the will. It is true, that by what is denominated a codicil to the will, dated May 23, 1889, and admitted to probate, though attested only by a single witness, the instrument theretofore mentioned in the will is referred to. But that codicil of the 23d of May, 1889, as we have before stated, relates wholly to after-acquired real estate, and is without legal effect, because not executed according to the requirement of the statute. Not being executed and attested in any more solemn and formal manner than the instrument referred to, it can hardly be relied upon as a republication to make such instrument a part of the will.

But the " written instrument " referred to, and which was refused probate by the court below, as not being part of the original will, is a paper of a testamentary character and as an independent instrument, affecting personal property only, would seem to be clearly entitled to admission to probate. It is clearly established that a testator may make

separate wills of separate parts of his property, and they need not all be proved together unless one incorporates another, as by expressly confirming it. *In re Astor,* 1 P. D. 150; *In re Harris,* L. R. 2 P. & D. 83; 1 Jarm. on Wills, 32. Whether an instrument is to be considered as a will or not, depends upon the intention of the maker; and it is among the settled principles of testamentary law that the form of the instrument propounded does not affect its title to probate, if it appears to have been the intention of the deceased that it should not take effect until after his death. *Boyd v. Boyd,* 6 G. & J. 25; *Wareham v. Sellers,* 9 G. & J. 98; *Byers v. Hoppe,* 61 Md. 200; *Cover v. Stem,* 67 Md. 449. In this case there can be no question of the testamentary character of the paper propounded for probate. The court below seems to have refused its admission to probate upon the ground alone that it did not strictly form a part of the original will, and in this the court was correct. But as an independent testamentary disposition of the personal property of the deceased, it was entitled to probate. And treating the instrument as an independent testamentary paper entitled to probate, it becomes necessary that it should be admitted to probate, in order that it may be effective; for if it be refused admission to probate, a court of construction will not proceed to consider the effect of the instrument. 1 Wms. on Exrs., p. 238; *Tappenden v. Walsh,* 1 Phill. 352; *Michael v. Baker,* 12 Md. 158; and *Schley, Exr., v. McCeney,* 36 Md. 266, 275, 276.

It is not, however, the province of a probate court to become a court of construction; that function belongs to the ordinary courts of law or equity. Hence, though this written instrument of the 26th of January, 1887, be admitted to probate, it will remain for a court of construction to determine whether the charity therein provided for is of such legal validity as to be capable of enforcement. In determining the instrument to be entitled to probate, we determine only that it is of a testamentary character, and

therefore entitled to probate in order that it may be effective as to personal property.

It follows that the order appealed from must be reversed, and the cause be remanded, to the end that proof of the execution of the paper be taken, and if proved that the same be admitted to probate, in accordance with the foregoing opinion.

*Order reversed, and cause remanded.*