(Decided 7th January, 1870.)

---

GEORGE SCHULL, (a Lunatic,) by GEORGE HUPP- MAN, his Committee, *vs.* JOHN P. MURRAY, Executor of MARGARET LUDEKING.

*Power of the Orphans' Courts as to the Probate of Wills—Capacity of a Married woman to make a Will, without the consent of her Husband—Competency of an Executor as a Witness.*

The Orphans' Courts have power to take probate of wills, but not to adjudicate questions of title dependent upon their operation and effect, or to decide upon the right of disposition. When probate is granted,

authority to determine what passes under the will is devolved upon the Courts of Law and Equity.

By the law of this State, a married woman is competent to dispose, by a will made without her husband's assent, of property which she was entitled to receive and hold to her sole and separate use, whether before or since the Code, if the instrument creating the separate estate be silent as to the mode of disposition; and she has also the power of devising, as if she were a *féme sole*, all the property, real and personal, which belonged to her at the time of marriage, if that took place since the adoption of the Code, and all the property which she may have acquired or received since that period, by purchase, gift, grant, devise, bequest, or in course of distribution.

The will of a *féme covert*, professing to dispose of her property, must be admitted to probate in the same manner as that of any other person, capable in law of making a will; and the jurisdiction of the Orphans' Court is limited to inquiries which relate to probate alone, such as testamentary capacity, fraud, undue influence, and the due execution of the instrument.

Upon a *caveat* to a will, the executor, not a party to the proceeding in the capacity of executor, is competent to testify upon his own offer, and in his own behalf, as caveatee.

APPEAL from the Orphans' Court of Baltimore City.

This appeal was taken from an order of the Orphans' Court of Baltimore city, dismissing the *caveat* of George Schull, a lunatic, by his committee, to the probate of two papers purporting to be last wills of his mother, Margaret Ludeking, executed the one on the 15th of July, 1863, the other on the 25th of April, 1864. By the first will the testatrix's brother, George ·Huppman, and her nephew, Nicholas A. Huppman, were appointed executors; by the second or last will, which contained a clause revoking all former wills, the appellee, John P. Murray, was appointed executor; the sole devisee under this will was George Schull, the son and only child of the testatrix. This will was admitted to probate by the Orphans' Court.

The *caveat* alleged the following grounds of objection to the wills:

1st. That the property which passed under the wills being property which had belonged to Mrs. Ludeking before the adoption of the Code, and her husband being alive at the time of the execution of such wills, and not consenting thereto, and they not having been republished after his death, were void.

2d. That Mrs. Ludeking was not of sound and disposing mind at the time of their respective execution.

3d and 4th. That she was urged to make the wills by improper importunities, which she was too weak to resist.

5th. That she was not capable of knowing the contents of the papers, the manner in which they disposed of her estate, and of withholding her assent from the same.

The answer of John P. Murray to the *caveat* alleged,

1st. That the husband of Mrs. Ludeking was insane at the date of the execution of the last will, and that she was not, at the time of her death—having survived her husband—a *fême covert*, and incapable of making a will.

2d. That the property which passed under the will was obtained by Mrs. Ludeking in April, 1863, subsequently to the adoption of the Code.

3d. That Mrs. Ludeking was of sound mind at the time of making this last will, and subsequently to the death of her husband.

4th and 5th. Traversed the latter averments of the *caveat*.

On these averments of the answer the caveator joined issue, and testimony was taken thereon.

The cause was argued before STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*Julian I. Alexander* and *T. A. Linthicum*, for the appellants.

The main witness for the caveatee was the appellee, who drew the will and was appointed executor in it. His testimony was excepted to as not admissible under the Acts of

1864, ch. 109, and 1868, ch. 116.   Before the Act of 1864, ch. 109, his evidence would have been inadmissible.   He must therefore come in under that Act; but the second section provides that when "an executor or administrator is a party to the suit, action or other proceeding, the other party may be called, &c., but shall not be admitted to testify on his own offer, &c., unless a nominal party merely."   The Act of 1868, ch. 116, adds a proviso, that when an executor is a party to the suit, when the cause of action has arisen on a contract made with such executor, &c., or out of transactions between such executor, &c., and the other party, or when the executor, &c., testifies as to any conversation had with the other party, either party may be examined as a witness.   In this case the executor is not a nominal party; the cause of action has not arisen out of any contract with the executor; nor out of transactions between the executor and the caveator; nor does the executor here testify to any conversation had with the caveator.

The wills are void, being made to operate on property acquired before the adoption of the Code, and not assented to by the husband of the testatrix.   *Beall vs. Schley,* 2 *Gill,* 181.   The caveatees themselves filed the deeds relating to this property; the one under which Mrs. Ludeking acquired the property within the meaning of the Code, is dated on the 2d November, 1854, and conveys the property therein described to Nicholas Huppman.   The second deed is from the devisees of Nicholas Huppman to Margaret Ludeking, she being also one of these devisees, and is dated 29th April, 1863.   It recites the former deed from Bull, and that the property was purchased by Nicholas Huppman, with the money of said Margaret Ludeking, and that the deed was intended to be in trust for her, and proceeds to convey it to Mrs. Ludeking.   The representatives of Nicholas Huppman stand in his place, and the recital that binds them is to be taken as if made by him.   It would be, therefore, equivalent to a declaration in writing made by Nicholas Huppman,

in his lifetime, of the constitution of the trust at the time of the conveyance, even if the consideration had not been entirely advanced by Mrs. Ludeking. But, in truth, it was advanced by Mrs. Ludeking, and the trust resulted to her. It is said by the Orphans' Court, "It is urged that it is recited in the deed to Margaret Ludeking, that Nicholas Huppman held it in trust for Mrs. Ludeking. We had no evidence before us to show this, and Nicholas Huppman being then dead, it was incompetent for these grantors to shew it"—and *Story's Eq. Juris.*, secs. 1201 *and* 1202 *n.*, is referred to, and the Court concludes that the property vested in Mrs. Ludeking after the adoption of the Code by a *voluntary gift of the grantors* in the second deed.

This doctrine of the Orphans' Court is not law. *Hill on Trustees*, 95, 96, *edition of* 1867, where the subject is discussed and the authorities collected; *Brown vs. Staup*, 21 *Md.*, 328, is conclusive on this point. If this view be correct, then Mrs. Ludeking acquired the property described in the will before the adoption of the Code, and the marital rights of her husband attached thereon. *Cecil Bank vs. Snively*, 23 *Md.*, 253; *Key vs. Buchanan*, 26 *Md.*, 1.

Mrs. Ludeking died in August, 1868, and the will made without the consent of her husband was void, without republication after her death. 1 *Bright H. & W.*, 12.

*Robert C. Barry* and *John C. King*, for the appellee.

The last will of Margaret Ludeking, devises to her son, George Schull, a lot of ground which had been bought by her brother, Nicholas Huppman, from George W. Bull, by deed dated November 2, 1854. The consideration of this deed was $2,000. The will states that part of this "purchase money was paid with money belonging to her son, and part exclusively her own." Nicholas Huppman, to whom the deed for this property was made, died in March, 1863.

The deed from Bull to Huppman, brother of the testatrix, is absolute and unqualified in its terms. After the death of

Nicholas Huppman, and on the 29th day of April, 1863, Margaret Huppman, executrix of Nicholas Huppman, and others, executed a deed of this lot to Margaret Ludeking. This is the first intimation on record, nine years after the conveyance to Nicholas Huppman, that the property conveyed to him absolutely was bought with the funds of the testatrix. No declaration of any resulting trust was ever made by the grantee. On the contrary it would appear from the declaration of the grantors in the deed just referred to, that he actually devised all his estate to the parties grantors in this conveyance.

This property actually descended to the heirs of Nicholas Huppman. In view of these facts, the testatrix can with no propriety be said to have acquired the property until the conveyance to her was, in fact, made and executed on the 29th day of April, 1863, three years subsequent to the adoption of the Code.

The objection of the *caveator* to the will of 1864, on the ground that the testatrix was a *fême covert* and incompetent to make a valid will conveying property without the consent of her husband, is not tenable, because the property conveyed by the will was in reality acquired subsequent to the adoption of the Code. *Code, Art.* 93, *sec.* 308; *Buchanan vs. Turner,* 26 *Md.,* 1.

The property was conveyed to the testatrix by the deed of April 29th, 1863. The appellant insists that the testatrix acquired this property by the deed of Bull to her brother, November 2d, 1854, nine years previous, because it appears that a portion of the purchase money belonged to the testatrix. "The doctrine of a resulting trust is, that payment of the purchase money is an equity to have the land." 1 *Leading Cases in Equity,* 281.

This trust is, therefore, a mere creature of a Court of Equity, repugnant to the common law rules of conveyance, and is wholly different from the acquisition of property. The *cestui que trust* acquires nothing until the trust is established by a

decree or a conveyance in compliance with the trust. The testatrix cannot be said to have acquired the property until it was conveyed to her.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court of Baltimore City dismissing a *caveat* filed by a lunatic son, by his committee, to the probate of two papers, purporting to be wills of his mother, executed, the one on the 15th of July, 1863, and the other on the 25th of April, 1864. The latter contains a clause revoking all former wills, and if entitled to probate, the case before us is determined.

At the time this instrument was executed, the testratrix was a married woman, and the first objection is that it was not made with the assent of her husband, and that the property thereby disposed of was acquired by her before the Code was adopted. Upon its face it professes to dispose of the personal estate and effects of the testatrix, and of a lot of ground, with improvements, the legal title to which she derived by a deed executed in 1863. It is contended by the appellant that she acquired the entire equitable interest in this lot prior to the Code, and the recitals in the deed, that it was purchased in 1851, with her money, though the title was then taken in the name of another, are relied on to establish this position. The appellee takes a different view of the subject, and insists the acquisition was solely by the deed of 1863. A controversy of this character cannot be settled in this case, because, whether the property passes under the will or not, is a question remitted to other tribunals for decision. The Orphans' Courts have power to take probate of wills, but not to adjudicate questions of title dependent upon their operation and effect, or to decide upon the right of disposition. By the law of this State a married woman is competent to dispose, by a will made without her husband's assent, of property which she was entitled to receive and hold to her sole and separate use, whether before or since the Code, if the

instrument creating the separate estate is silent as to the mode of disposition, and she has also the power of devising, as if she were a *féme sole*, all the property, real and personal, which belonged to her at the time of marriage, if that took place since the adoption of the Code, in 1860, and all the property which she may have acquired or received since that period by purchase, gift, grant, devise, bequest, or in course of distribution. *Cooke vs. Husbands*, 11 *Md.*, 492; *Code, Art.* 45, secs. 1, 2, and *Art.* 93, sec. 308. Capacity to make a will without consent of her husband being thus conferred upon a *féme covert*, a will executed by her, professing to dispose of her property, must be admitted to probate in the same manner as that of any other person capable in law of making a will, and the jurisdiction of the Orphans' Court is limited to inquiries which relate to the probate alone, as in other like cases, such as testamentary capacity, fraud, undue influence, and the due execution of the instrument. When probate is granted, authority to determine what passes under the will is devolved upon the Courts of Law and Equity, tribunals which are clothed with ample jurisdiction to decide that question. *Michael vs. Baker*, 12 *Md.*, 169. Probate is indeed necessary to enable parties claiming under the will to assert, in the appropriate forum, their title to the property it professes to pass. The first objection, therefore, is no ground for refusing probate to this instrument.

The other objections are undue influence and want of testamentary capacity. The whole property disposed of is given absolutely to the *caveator*, who is the only child and sole heir-at-law of the testatrix. There is no proof of undue influence, and, indeed, the disposition of the property is such as to exclude the idea that its execution was procured by the exertion of any such influence.

The remaining question of testamentary capacity is one purely of fact, depending upon the evidence contained in the record. The party named as executor was examined as a witness, upon his own offer, and in his own behalf as caveatee,

and exception is taken to his competency. Before the Act of 1864, ch. 109, he would have been incompetent, as well by reason of interest in the result of the trial as of being a party to the proceedings. But both these objections are expressly removed by the first section of that Act, and he is clearly a competent witness, unless excluded by the second section, as modified by the Act of 1868, ch. 116. This, so far as it touches the present question, provides that " when an original party to a contract or cause of action is dead, or shown to be lunatic or insane, or when an *executor* or administrator is a party to the suit, action, or other proceeding, either party may be called as a witness by his opponent, but shall not be admitted to testify on his own offer, or upon the call of his co-plaintiff or co-defendant." It is sufficient to dispose of the precise point which has now arisen to say, without adverting to other considerations, that this witness was *not a party* to the proceeding in the capacity of *executor*. The will had not been admitted to probate, no letters had been granted to him, and the very question at issue was, whether he should be an executor or not. He was named executor in a paper whose existence and validity as a will was the subject of dispute, and simply stood in the proceedings as a party caveatee whose interest, and perhaps duty, it was to sustain the instrument. He occupied no different relation to the proceedings, either in point of interest or position as party, than if he had been named a devisee or legetee in the will, and for that reason had been made a party caveatee. We are entirely satisfied of his competency, and his testimony must be considered with the other evidence in the cause.

After a careful examination of all the proof in the record on that subject, we are satisfied Mrs. Ludeking was possessed of testamentary capacity at the time she executed this will. No valuable result, in the way of a precedent for other cases, would be attained by extended comments on the evidence, and, therefore, none need be made. Such being our judgment upon the facts, and none of the objections to the probate of

18          MARYLAND REPORTS.

this paper being sustained, it becomes quite unnecessary to express any opinion upon the question whether, under the circumstances of the case, the appellant was entitled to interpose this *caveat*.   The order appealed from must be affirmed.

*Order affirmed.*

(Decided 10th January, 1870.)