(Decided 18th June, 1872.)

---

MARY E. SCHLEY, Executrix, Devisee and Legatee of JAMES HIGGINS, deceased, *vs.* HENRY C. McCENEY, EDGAR P. McCENEY, and ANNA McCENEY, Guardian, &c.

*Execution of a Power by a Married woman.*

A married woman in 1849, by a deed of settlement conveyed real and personal property to her husband upon certain trusts, with power reserved to herself "by will duly executed according to the mode now prescribed for the execution of wills, or in the mode which may be prescribed at the time of the execution of her will, or by any testamentary paper in the nature of a will, provided the same shall be executed in the presence of at least two persons, to change the limitations, trusts, and uses" mentioned in the deed, to take effect after the death of her husband, and dispose of, devise and bequeath the property

Schley, Exc'x, &c. *vs.* McCeney, Guar., &c.

as she might think fit. In 1859, she executed a testamentary paper attested by three witnesses, which specifically referred to the power in the deed and professed to be in execution of it. This paper was in due form as a will to pass real estate, as prescribed by the general law of the State upon the subject. It was not executed however with the formalities, and under the restrictions as prescribed by the Act of 1842, ch. 293, empowering *fêmes covert* to dispose of their property held in their own right. By this testamentary paper the trusts in the deed were revoked and altered so as to leave to the husband only the life estate therein provided for him. In 1867, the testatrix died without children, leaving this testamentary paper unrevoked, and her husband surviving her. He died in 1870. Shortly after his decease, his executrix, sole devisee and legatee, filed a caveat to the will of his wife, which had been deposited in the office of the Register of Wills. The Orphans' Court passed an order admitting the paper to probate. On an appeal by the caveator from this order, it was HELD:

That the testamentary paper purporting to have been executed in pursuance of the power contained in the deed of settlement, was sufficient to gratify either of the two modes therein prescribed for the execution of the power, and was properly admitted to probate.

APPEAL from the Orphans' Court of Anne Arundel County.

On the 23d of April, 1867, there was deposited in the Orphans' Court of Anne Arundel County, a paper purporting to be the last will and testament of Mrs. Eliza Higgins, wife of Dr. James Higgins, with memoranda showing the circumstances of the finding, and the reasons for depositing it with the Register of Wills. This paper which purported to have been executed in virtue of the power vested in the testatrix by a deed of settlement, dated the 2d of March, 1849, revoked and altered the trusts in said deed, so as to leave to her husband only the life estate therein provided for him, and devised and bequeathed after his death all of her estate to the children of her brothers, Henry C. McCeney and George McCeney. A caveat to the probate of this paper was filed on the 24th of May, 1870, by the appellant, executrix and sole devisee and legatee of Dr. James Higgins, who had died in the preceding March. Accompanying this caveat was the will of Dr. Higgins, dated the 13th of February, 1867. On

the 1st of August, 1871, the appellees, two of whom were the children of George McCeney, and devisees and legatees of Mrs. Higgins, and the other was the mother and legal guardian of the children of Henry C. McCeney, likewise devisees and legatees of Mrs. Higgins, filed a paper assigning reasons why Mrs. Higgins' will should be admitted to probate, and reserving a right to object to the jurisdiction of the Orphans' Court. Evidence was offered as to the execution of Mrs. Higgins' will, and copies of her ante-nuptial contract and of the deed of settlement, were also given in evidence. On the 20th of February, 1872, the Court passed an order admitting the will of Mrs. Higgins to probate.

From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and ALVEY, J.

*Wm. Shepard Bryan* and *Alex. B. Hagner,* for the appellant.

The order of the Orphans' Court should be reversed, because there was no proof of the execution of the paper by Mrs. Higgins. She ought to have signed in the presence of the witnesses, and they ought to have signed in her presence.

It ought to be reversed for the more fatal reason that the paper shews on its face that it was not executed according to the Act of 1842, ch. 293.

A married woman may act as a *fême sole* in reference to her separate property in equity. But this paper is in no sense an act in reference to Mrs. Higgins' separate property. The trust for her separate use terminated at her death. After death other trusts were declared. She had no ownership whatever in the property affected by the trusts declared, in the event of her husband surviving her. And as the *jus disponendi* depends upon the ownership, (*Cooke vs. Husbands,* 11 *Md.,* 505,) there is no pretence here that she could exer-

cise this right, unless it had been conferred by the deed of trust. The deed does not restrain a right already existing, as in *Cooke vs. Husbands;* but it confers a power which is to be strictly pursued. There "must be a strictly literal and precise performance." *Sugden on Powers,* 211, (*3d Lon. Ed.,*) or 15 *Law Lib.,* 265, 268, 295, 297.

The power was to be exercised by *will,* or *testamentary paper in the nature of a will.* When a power is to be executed by will, the instrument must be executed with the solemnities required by law. (*Sugden on Powers,* 233.) The case is stronger, where it is required to be *duly* executed, (as in this case;) the donor must be considered as referring to the mode of execution prescribed by law. "The same rule applies where the power is to be executed by 'any writing in the nature of a will,' for those words mean the same as a will." *Sugden on Powers,* 233; also, *same work,* 208; *Longford vs. Eyre,* 1 *Peere Williams,* 740; *Wagstaff vs. Wagstaff,* 2 *Peere Williams,* 258; *Habergham vs. Vincent,* 2 *Vesey, Jr.,* 204–235. In this last case, the Lord Chancellor, speaking of the exercise of a power, says, "if it is to pass by a testamentary act, that must have all the requisite solemnities the law has directed."

Mrs. Higgins was empowered to make a will "duly executed according to the mode now prescribed for the execution of wills, or in the mode which may be prescribed at the time of the execution of her will, &c., &c." That mode is found in the *Act of* 1842, *ch.* 293, *sec.* 6.

In no other mode, could a married woman, at either of the times mentioned, perform a valid testamentary act.

No reason can be assigned why she should be permitted to act as a *féme sole* in exercising this power. She was a married woman, and the law prescribed the mode in which a married woman should proceed. It is not the case where a married woman disposes of her separate estate, being in equity a *féme sole, pro hac vice.* Nor is it a case where she could not execute the power, unless she acted as a *féme sole.*

The question here is not on the right of disposal. The power to make a will is admitted; but the paper offered for probate was not properly executed. In *Michael vs. Baker*, 12 *Md.*, 158, the power was given expressly to the married woman "to devise and bequeath as if she were a *fême sole;*" and this Court decided that the proper question for the Orphans' Court was whether the will had been validly executed.

It does not appear that the appellees have any interest or right to file the paper on which they rely as an answer to the *caveat*. There is no proof that Henry C. McCeney, named as executor in Mrs. Higgins' will, is dead. If alive, he was the only proper party. If dead, those who claim to interfere in behalf of the will, should have shewn by proof that they had such a relation to the property as entitled them to proceed in the manner shewn by the record.

*G. W. P. Smith* and *Jas. R. Howison*, for the appellees.

No appeal should be allowed in this cause, as it does not appear by the record that the appellant gave any notice that she intended to take an appeal at the time that the witnesses to Mrs. Higgins' will were examined. When an order is passed on summary proceedings in the Orphans' Court, and on the testimony of witnesses, no appeal is allowed, unless the party desiring the appeal immediately so notifies his intention, and requests the testimony to be reduced to writing—the depositions to be at his cost. *Code, Art. 5, sec. 40; Cecil vs. Harrington & Cooper,* 18 *Md.*, 51.

The will of Mrs. Higgins was properly executed and in strict conformity with the deed of settlement.

The appellees have such an interest under Mrs. Higgins' will as entitles them to file an answer to the *caveat* of the appellant; any person having an interest in a will, is a proper party to see that the same is properly protected. *Dorsey vs. Warfield,* 7 *Md.*, 65.

It is insisted by the appellant, that the will of Mrs. Higgins is not in accordance with the Act of 1842, ch. 293, sec-

tion 6. The Act of 1842 has no bearing upon this case, as *the action* of the Orphans' Court alone is called in question. The Orphans' Court has not the right to decide upon the disposal of property, but only upon the *factum* of the will. *Michael vs. Baker, Ex'x of Michael*, 12 *Md.*, 169.

The Act of 1842 was intended only to confer upon married women the power of making a will, and to regulate the mode of doing so when their rights in this particular had not been previously defined by a *marriage contract.* The marriage contract in this case, gave power to Mrs. Higgins, after her marriage, " to sell, convey or dispose of her property, or any part thereof, by deed executed and recorded according to law." And the deed of settlement expressly granted to her power to dispose of her property by will " duly executed according to the mode now prescribed for the execution of wills, or in the mode which may be prescribed at the time of the execution of her will, or by any paper testamentary in the nature of a will, provided the same be executed in the presence of at least two persons."

This contract was made prior to the Act of 1842, and the deed of 1849 was made in accordance with the contract of 1840. It has never been doubted that a married woman, particularly authorized by a marriage contract, could dispose of her property, made her separate estate by the contract, either by deed or will, provided the same was done in the mode and manner prescribed by the contract.

Mrs. Higgins did nothing not authorized by her marriage contract, and, her will made in pursuance thereof is valid. *Michael vs. Baker*, 12 *Md.*, 168, 169 ; *Tappenden vs. Walsh*, 1 *Phillimore*, 352 ; *Cooke vs. Husbands, et al.*, 11 *Md.*, 492 ; *Roper on Husband and Wife*, chs. 19, 20 ; 1 *Sugden on Powers*, ch. 4, sec. 1 ; *McQueen on Husband and Wife*, 294 ; *Clancey on Husband and Wife*, chs. 5, 6, 7, 8.

A *fême covert* may act in regard to her separate estate as a *fême sole*, when the settlement contains no limitations upon the subject. *Cooke vs. Husbands, et al.*, 11 *Md.*, 506.

The appellant contends, "that Mrs. Higgins had no ownership in the property affected by the trusts declared in the deed of 1849, in the event of her husband surviving her." Under the deed of 1849, Mrs. Higgins had at all times the right to dispose of her separate estate, but if her husband survived her, then he had a life estate in her property, and a disposition of the same by her will would only go into effect after his death, which is this exact case.

ALVEY, J., delivered the opinion of the Court.

The appeal in this case is from the Orphans' Court of Anne Arundel county, and the only question is, whether the will, or paper testamentary in the nature of a will, of Mrs. Eliza Higgins, wife of James Higgins, executed under a power, contained in a deed of settlement, was properly admitted to probate.

The property embraced by the deed, consisting of both real and personal, was that of the wife before marriage, and was conveyed to the husband in 1849, upon the following trusts, subject to the power of disposal by the wife: 1st, For the separate use of the wife during the marriage; 2d, after her death, if she should die before her husband, to the use of the husband for life; 3d, after the death of the husband, if he survived the wife, to the use of the children of the wife; 4th, if the wife should die without children, then to the use of the husband absolutely and in fee; 5th, but if the wife should survive the husband, then in trust for her absolutely and in fee; "with the further power to the said Eliza, by will duly executed according to the mode now prescribed for the execution of wills, or in the mode which may be prescribed at the time of the execution of her will, or by any paper testamentary in the nature of a will, provided the same shall be executed in the presence of at least two persons, to change the limitations, trusts and uses" theretofore mentioned, to take effect after the death of the husband, and dispose of, devise and bequeath the property as she might think fit.

Mrs. Higgins, in 1859, executed a testamentary paper, attested by three witnesses, and which specifically refers to the power in the deed, and professes to be in execution of it. This paper is in due form as a will to pass real estate, as prescribed by the general law of the State upon the subject. It was not executed, however, with the formalities and under the restrictions as prescribed by the Act of 1842, ch. 293, empowering *fêmes covert* to dispose of their property, held in their own right.

Mrs. Higgins died in 1867, leaving this will or testamentary paper unrevoked, without children, her husband surviving her. The paper was lodged in the Orphans' Court for probate, and to which was filed a *caveat* by the appellant, the devisee, legatee and executrix of James Higgins, who died in the year 1870. The paper was admitted to probate, and it is from the order admitting it to probate that this appeal is taken.

There can be no question made of the right of a *fême covert* to execute a power, whether collateral, appendant or in gross, and in no case is the concurrence of the husband necessary, unless made so by the power itself. The law prescribes no particular ceremonies to be observed in the execution of a power; but the terms of the power may direct it to be executed by a note in writing, or by will, or deed, or may prescribe any ceremonies which the will or caprice of the party creating it may think proper, all of which must be complied with, however unessential or unimportant they may appear to be in themselves. 2 *Washb. Real Prop.*, 317; 1 *Sugden on Pow.*, 211; *Hawkins vs. Kemp*, 3 *East*, 410, 430.

The objection in this case to the probate of the paper by which the power was attempted to be executed, as we understand it, does not go to the nature of the paper itself, nor to the competency of the donee of the power to execute it, but to the manner of its execution. It is insisted that the testamentary paper, referred to in the power, to be entitled to probate, should be executed according to the mode prescribed for the execution of wills; and that this direction means the spe-

cial and particular mode prescribed by the Act of 1842, chap. 293, sec. 6, for the execution of wills by *fémes covert.* But it must be observed that according to the direction, the power could be executed either by a will duly executed according to the mode prescribed by law for the execution of wills generally, or by any paper testamentary in the nature of a will, provided the same be executed in the presence of at least two persons. Now, according to the first mode designated for the execution of the power, that by will duly executed according to law, no less than three witnesses would be sufficient, as to the real estate; and the law was not altered in this respect by the Act of 1842, ch. 293, as applied to wills of *fémes covert.* But by the other mode designated, that by paper testamentary in the nature of a will, executed in the presence of two witnesses, the parties to the deed have prescribed the particular ceremony for the execution of the testamentary paper, and it would by no means consist with a fair interpretation of the power, to superadd other ceremonies, such as those prescribed by the Act of 1842, chap. 293. If the parties intended that the ceremonies prescribed by that Act should be observed, why were they not specific in their direction? Looking to the intention of the parties, it is pretty manifest, we think, that they never designed that the execution of the power should be clogged with such ceremonies as those prescribed by the Act of 1842. Indeed, they were quite inappropriate to the purpose intended. Besides, if the Act of 1842 has application at all, all the formalities and ceremonies therein prescribed would have to be observed. Not only the written consent of the husband, which had already been given by the deed itself, but the private examination of the testatrix by the witnesses, and the making the will sixty days before death, would have to occur to make the paper effective. Such restriction, we think, was never contemplated in the direction given for the execution of the power before us.

In 4 *Kent's Com.,* 331, it is said, that "When there are several modes of executing a power, and no directions are given,

the donee may select his mode; and the Courts seldom require any formalities in the execution of the power, beyond those required by the strict letter of the power." And so in *Chance on Powers*, sec. 907, *p.* 329, it is said : "Where a party directs a power to be executed by 'will' simply, it may be a reasonable presumption that he means such a will as would be requisite to dispose of the like species of property ; but where he prescribes certain formalities, the presumption ceases ; it seems fair then to conclude, that all which he means is a testamentary act, attended with the formalities prescribed by himself." Here, there are two modes prescribed ; the one to be by will duly executed according to law, which fairly means the general law regulating the execution of wills, the disability of coverture of the donee being in this respect dispensed with ; the other by a testamentary paper in the nature of a will, to be executed in the presence of two witnesses, without any thing more. The paper produced, and which has been admitted to probate, would seem to be sufficient to gratify either mode of executing the power.

But if it were doubtful whether the power had been properly executed, it would still be proper that the paper in question should be admitted to probate, provided it be shewn to have been executed, and left unrevoked, by the party whose act it professes to be. The practice of the Ecclesiastical Courts in England has always been, in reference to a paper of the character of the one before us, although real doubts might exist as to its sufficiency to execute the power, to admit it to probate ; this being deemed the safer course. In such cases, the production of the probate will not alone be sufficient to induce a Court of Equity to act upon it; for, as stated by *Williams on Executors*, (1 *vol.*, 49,) "with respect to other special circumstances which may be required to give the instrument effect as a valid appointment, viz., attestation, sealing, &c., the Temporal Courts have never been contented with the judgment of the Spiritual Court; whilst, on the other hand, if the Court of Probate should reject the paper, its de-

cision would be final; as the Court of Construction will not proceed to the consideration of the effect of any testamentary paper, till it has been proved in the proper Ecclesiastical Court." *Tappenden vs. Walsh,* 1 *Phillimore,* 352; *Allen vs. Bradshaw,* 1 *Curt.,* 110; *Tucker vs. Inman,* 4 *M. & Gr.,* 1049; *Jenkin vs. Whitehouse,* 1 *Burr.,* 431; *Rich vs. Cockell,* 9 *Ves.,* 376; *Douglas vs. Cooper,* 3 *M. & K.,* 378; *Goldsworthy vs. Crossley,* 4 *Hare,* 140.

The same practice, it has been decided by this Court, in *Michael vs. Baker,* 12 *Md.,* 158, is proper to be observed and conformed to by our Orphans' Courts.

The paper, therefore, even if there existed a doubt as to its sufficiency to execute the power, should be admitted to probate, leaving the question, whether the requisites of the power had been complied with, to be determined by other tribunals.

It appears, however, that the proof in the Orphans' Court, as to the execution of the paper and its attestation, was irregular and incomplete. We shall, therefore, reverse the order appealed from, and remand the cause, that the proof by the witnesses may be more regularly taken, as to all the requisites to entitle the paper to probate.

*Order reversed and*
*cause remanded.*

(Decided 19th June, 1872.)