R. C. STEARNS, APPELLANT, VS. LOUIS A. FRA-
LEIGH, ALBERT E. FRALEIGH, PARRAMORE COG-
GINS IN RIGHT OF HIS WIFE LILLIE F. COGGINS,
AND LILLIE F. COGGINS IN HER OWN RIGHT,
ALEXIS M. MICHELSON IN RIGHT OF HIS WIFE AL-
LIENE MICHELSON, AND ALLIENE MICHELSON, A
MINOR UNDER TWENTY-ONE YEARS OF AGE, BY HER
NEXT FRIEND WILLIAM S. JORDAN, WILLIAM M.
BURTON IN RIGHT OF HIS WIFE EMILY BURTON,
AND EMILY BURTON, A MINOR UNDER TWENTY-ONE
YEARS OF AGE, BY HER NEXT FRIEND WILLIAM S.
JORDAN, APPELLEES.

1. Where the instrument creating a trust empowers a trustee to re-
sign after acceptance, a resignation in the manner pointed out
by such instrument will be valid.

2. An instrument of writing by which one named as trustee in a
trust deed, after reciting that he was holding in trust certain
lands, etc., for certain named beneficiaries, more fully set
forth and described in the deed creating the trust, did thereby
resign and relinquish said trusteeship as by the provisions of
said trust deed he claimed the right and authority to do, is a
resignation of a trust already accepted, and not a refusal to
accept the trust.

3. Under a power given to a wife to appoint and choose by her
writing, under her seal, another trustee instead of the one
named in a trust deed executed by her husband conveying
real and personal property in trust for the wife and her chil-
dren, whenever the named trustee should wish to resign his
trust, or should die leaving the same unfulfilled, the wife has
authority to appoint her husband to be such trustee upon the
resignation of the one named. The husband's acceptance of
such appointment binds him to execute the trust according to
its terms, and he thereby becomes invested with the same
powers, and is subject to the same responsibilities, as other
trustees, and the wife is entitled to the same protection
against him in equity as any other *cestui que trust*.

4. By the common law a married woman may, without the concurrence of her husband, execute a power, whether given to her while sole or married; and she can execute such power in favor of her husband.

5. The power to appoint a trustee upon certain contingencies, invested in a married woman by a deed conveying property to a trustee for the benefit of the married woman and her children, may be executed by the married woman without her husband's concurrence, and without the formalities required by our statutes regulating married women's conveyances, as such statues have no reference to the execution of powers, but only to conveyances of the married woman's property. The execution of such power in the manner prescribed by the trust deed will be sufficient.

6. Where real property is conveyed in trust with power to the trustee to sell same, and with authority to the named trustee to resign, and power to a beneficiary to "appoint * another trustee instead of the" one originally named, the trustee so appointed taking the trusteeship subject to the trusts limited in the trust deed, and the substituted trustee sells and conveys the real property in accordance with the power contained in the trust deed, the purchaser will thereby acquire the legal title, although the resigning trustee failed to convey the trust property to his successor.

Appeal from the Circuit Court for Gadsden county.

### STATEMENT.

On June 4, 1890, appellees filed their bill in equity in the Circuit Court of Gadsden county making appellant and one Mary A. Fraleigh defendants thereto. An amended bill was filed by appellees April 16, 1891, whereby it was alleged that on January 18, 1864, Emanuel M. Fraleigh, husband of defendant Mary A. Fraleigh, executed a trust deed of conveyance to one Samuel B. Love, a certified copy of which was made a part of the bill. The deed referred to purported to be made for and in consideration of the great love and

affection which the grantor bore towards his wife Mary A. Fraleigh and his children, Lillie C., Cornelia M., and Clara W. Fraleigh, as well as in consideration of the sum of ten dollars to the grantor paid; and it conveyed to Samuel B. Love, his heirs and assigns, certain real and personal property in Gadsden county therein described. The deed contained the following provisions: "To have and to hold the afore granted property to the said S. B. Love, his heirs and assigns, in trust nevertheless, for the sole use of the said Mary A. Fraleigh, wife of the said E. M. Fraleigh, for and during her natural life, and after her death to such children as she may have living at the time of her death, share and share alike, with power to the said Samuel B. Love to sell any portion of said trust estate and to reinvest the proceeds in such other property, subject to the above described trust, as he shall deem most for the interest of said trust estate, with power to the said Mary A. Fraleigh to appoint and choose by her writing under her seal another trustee instead of the said Samuel B. Love, whenever the said Samuel B. Love shall wish to resign said trust or shall die leaving the same unfulfilled, said trustee so appointed taking said trusteeship subject to the trust herein limited."

It was further shown by the amended bill that on May 23, 1866, Samuel B. Love executed under seal, and in the presence of two subscribing witnesses, an instrument in writing whereby, after reciting that said Love was holding in trust certain lands, etc., for Mary A. Fraleigh and her children, more fully set forth and described in the trust deed above described, he did thereby resign and relinquish said trusteeship, as by the provisions of said trust deed he claimed the right

and authority to do; and on the same day Mary A. Fraleigh executed under seal, and in the presence of two subscribing witnesses, an instrument in writing whereby, after reciting the trust deed before referred to and its provision empowering her to appoint or choose another trustee whenever the said Love wished to resign, and that said Love had resigned the trusteeship leaving same unfulfilled, she did by virtue of the authority vested in her by said trust deed, constitute and appoint E. M. Fraleigh trustee in lieu of said Love. Each of these instruments was proven by a subscribing witness and recorded in the clerk's office of Gadsden county on August 23, 1866.

It was further alleged by said amended bill that appellant was in possession of certain lands described in the trust deed, claiming title to same by virtue of a deed from one Samuel Hamlin, who received deeds to said lands from Mary A. and E. M. Fraleigh, the latter pretending to execute said deeds as trustee, dated January 20, 1874; that the property embraced in said deed had "run down," and was "going to waste," and that appellees had received no benefits, rents or profits therefrom since the date of said deed to Hamlin; that appellant and Samuel Hamlin combined and confederated with E. M. Fraleigh and other persons to destroy the force and effect of the trust deed, and to deprive appellees of all benefits that might arise from the proper control and management of the property, in order that appellant might obtain title thereto and possession thereof, and that the title passed to the said Samuel Hamlin for little or no consideration; that the proceeds of the sale were not reinvested as required by the trust deed, and that appellant knew that fact; that the appointment of Emanuel M. Fraleigh as trustee

was unauthorized, null and void, the said Mary A. Fraleigh being under coverture, the wife of said E. M. Fraleigh, at the time of making such appointment; that the deeds, made by virtue of said appointment, by E. M. Fraleigh, pretended trustee, and the said Mary A. Fraleigh to Samuel Hamlin, and the one from Hamlin to appellant passed no title, and were null and void.

It was further alleged that Samuel B. Love and E. M. Fraleigh were dead; that appellees Louis A., Albert E., Lillie F., Alliene and Emily were the only surviving children of Mary A. Fraleigh, and were all over twenty-one years of age, except Alliene and Emily who were about twenty years of age. The consideration expressed in the deeds from Fraleigh and wife to Hamlin was $700.

The bill prayed that the appointment of E. M. Fraleigh to be trustee, the deeds to Samuel Hamlin, and the deed to appellant, be declared illegal, null and void; that appellant be required to produce the deeds in court for cancellation; that a trustee be appointed, *vice* Samuel B. Love, deceased, and for general relief.

The separate answer of appellant to the amended bill of complaint filed May 19, 1891, admitted the execution of the trust deed by E. M. Fraleigh, the appointment of E. M. Fraleigh to be trustee by Mary A. Fraleigh, the resignation of S. B. Love as trustee; that appellant was in possession of certain land described in the trust deed, and claimed same under a deed from Samuel Hamlin, who acquired title to same by deeds from Mary A. Fraleigh, and Emanuel M. Fraleigh, as trustee, and denied that the property had run down or was going to waste, that the lands passed to Ham-

lin for little or no consideration, that the proceeds of sale were not reinvested as required by the trust deed, and that appellant knew that fact.

Appellant by his answer also denied all charges of combination and confederacy made against him in the bill; and alleged that he purchased the lands mentioned in the bill from Samuel Hamlin in March, 1878, in good faith, and without notice of any equities claimed by appellees, paying therefor the sum of $1,500.

The case was set down for hearing on amended bill and answer of appellant, and on November 4, 1893, a decree was rendered, whereby it was decreed that the appointment of E. M. Fraleigh to be trustee, by Mark A. Fraleigh, his wife, was illegal, null, and utterly void; that the deeds from E. M. Fraleigh, as trustee, and his wife Mary A. Fraleigh to Samuel Hamblin passed whatever right, title or interest that Mary A. Fraleigh might have had in the property attempted to be thereby conveyed, but did not pass any right, title or interest of the children of Mary A. Freleigh, and as to such children the deeds were absolutely null, void and of no effect whatever; that the deed from Hamblin to appellant passed no title whatever to any lands embraced in the original trust deed, except the interest or estate which Mary A. Fraleigh had therein, and which she might have conveyed to Samuel Hamblin in the deeds to him before mentioned, and that for any other purpose, or to any other extent, the said deed from Hamblin to appellant was utterly null, void and of no effect; that D. McMillan be and he was thereby appointed trustee to take charge of, recover and manage the lands described in the trust deed from Fraleigh to Love, so far as the interest and estate of

the children of Mary A. Fraleigh extended, subject to the same trust and powers as mentioned in the original trust deed in respect to said children. From this decree Stearns entered his appeal on March 24, 1894, to our June term, 1894, claiming in his petition of appeal that the court erred in decreeing: 1st. That the appointment of E. M. Fraleigh as trustee, by his wife, was illegal and void. 2d. That the deeds from Fraleigh, trustee, and his wife to Samuel Hamblin did not pass to Hamblin any right or interest of Mary A. Fraleigh's children, but that as to them the deeds were absolutely null and void. 3d. That the deed from Hamblin to appellant passed only the interest of Mary A. Fraleigh in the lands conveyed, and to any further extent was null and void. 4th. The appointment of D. McMillan to be trustee.

*Fred T. Myers*, for Appellant.

*W. H. Ellis*, for Appellees.

CARTER, J.:

The appellant having failed to argue the fourth error assigned in the petition of appeal, we treat it as abandoned. The principal question involved by the other assignments is, whether the appointment of E. M. Fraleigh to be trustee, by his wife, under the power of appointment given her by the terms of the trust deed, was a valid act. If so, and the deeds to Hamblin passed title, the appellant being a purchaser for value from him, without notice of any equities claimed by appellees, would obtain a good title. Saunders vs. Richard, 35 Fla. 28, 16 South. Rep. 679. The hearing in the court below was upon bill and answer, and it

will be observed that the answer denied that the sale to Hamblin was for little or no consideration; that the proceeds of the sale had not been reinvested, and all charges of fraud and conspiracy on the part of appellant to obtain title to the property. The deeds to Hamblin expressed a consideration of $700, and, in the absence of actual notice, the appellant could only be charged with constructive notice to the extent of that furnished by the record of the trust deed and of those to Hamblin.

It is insisted by appellees that the appointment of E. M. Fraleigh to be trustee was void, because, first, the trustee, Love, could not, after having accepted the trust, resign or renounce it; second, a married woman can not appoint her husband trustee of a trust created by him for the benefit of herself and children; third, the execution of the instrument of appointment was not joined in by Mrs. Fraleigh's husband, nor did she acknowledge its execution separate and apart from her husband.

1. The general rule, that a trustee can not, after having accepted a trust, resign or renounce it at his pleasure, contended for by appellees, is unquestionably correct; but it is equally true that where the instrument creating the trust empowers the trustee to resign after acceptance, a resignation in the manner pointed out by such instrument will be valid. 1 Perry on Trusts, sec. 274; 2 Lewin on Trusts, *646; Tiffany & Bullard on the law of Trusts and Trustees, p. 536. It is not denied that the trust deed authorized Mr. Love to resign, nor that his resignation was in strict accordance with the authority, but the appellees ask us to construe the written resignation as a refusal to accept the trust, and it is insisted that Mrs. Fraleigh

had no authority to appoint another trustee, in case of Mr. Love's refusal to accept the trust, but only in the event of his resignation. The instrument expressly recites the fact that Mr. Love was holding property in trust, and it referred to the trust deed for a description of the property so held, and to its provisions authorizing him to resign. If he was holding the property in trust as declared by this instrument, he had accepted the trusteeship, and the instrument was what it purported to be—a resignation of the trust, and not a refusal to accept it.

2. It is argued by appellees that the appointment of E. M. Fraleigh as trustee of a trust created by him for his wife and children, would defeat the object of the trust, and his acceptance would amount to a revocation thereof, and we are referred to the case of Robinson vs. Executors of Dart, Dud. Eq. 128, and to the cases of Richards vs. Chambers, 10 Ves. 580; Magwood & Patterson vs. Johnston, 1 Hill Chy. 228, and Ewing vs. Smith, 3 Desaus. Eq. 417, S. C. 5 Am. Dec. 557, cited therein, as sustaining this proposition. The two last cases have no reference to the question under consideration. The case of Richards vs. Chambers, 10 Ves. 580, as quoted in the first named case, would go far towards sustaining the contention of appellees, but a reference to the official report of the case shows that it sustains the contrary view. There, the property, by a marriage settlement, was secured to the sole and separate use of the wife for life, and if she survived her husband, to her absolutely, but if she died before her husband, it was to go to such persons as she by will or deed might appoint, and in default of appointment, to her executors or administrators. The husband and wife by petition applied to

have a part of the trust property then in court trans-
ferred to them, the wife having executed an appoint-
ment in favor of the husband and expressed a desire
upon an examination *de bene esse*, that the petition be
granted. The court said: "The wife having a separate
estate for life, might, according to the doctrine of
many cases, part with that life interest. She might
also *execute an appointment in favor of her husband*,
or of any person, which appointment in the event of
her death in his life would be a valid and effectual
disposition of the property. But the question is,
whether the *contingent* interest, which the wife while
*sui juris*, has secured to herself in the event of her
surviving her husband, can through the interposition
of this court, be given up by her while in a state of
coverture." The question in that case was as to a
contingent interest, over which the wife had no power
of appointment by contract, and the proposition was
distinctly recognized that she could exercise a power
of appointment even in favor of her husband. In
Robinson vs. Executors of Dart, Dud. Eq. 128, appli-
cation was made to a court of equity to appoint a hus-
band trustee for his wife. The court declined to ap-
point him, or to direct that the wife's separate prop-
erty be turned over to him, holding not that he was
incompetent or disqualified, but that he was an im-
proper person to whom to commit the trusteeship.
The reasons advanced by the court were, that if ap-
pointed he would be constantly tempted to use the
authority and influence of a husband to assume the
disposal of the property to his own uses, and induce
his wife's acquiescence, and that a court of equity
should not place a wife in such a situation that she
might be compelled to go into equity to call her hus-

band to account for breeches of his duty as trustee. To the same effect, see Boykin vs. Ciples, 2 Hill Chy. 200, S. C. 29 Am. Dec. 67; Ex parte Hunter, Rice Eq. 293; Dean vs. Lanford, 9 Rich. Eq. 423. In none of the cases referred to by appellees was any question involved as to whether under a power to appoint new trustees, a married woman could appoint her husband; nor was it held that a husband was incompetent or disqualified to be trustee for his wife. There is a very clear and obvious distinction between the *incompetency*, and the *unfitness*, of a person for the position of trustee; and between the power of an individual to select a trustee, and the duty of a court in appointing one. Forster vs. Abraham, L. R. 17 Equity Cases, 351. The general rule is that any person may be appointed a trustee who is capable of confidence, of holding real and personal property, and of executing the trust. 3 Kerr on Real Property, sec. 1728; 1 Perry on Trusts, sec. 39; Tiffany and Bullard on the law of Trusts and Trustees, 325. It is not denied that the husband in this case was capable of everything required by the general definition, and that he was in fact a competent trustee for his children under the same deed; then why not for his wife? In equity he has been frequently held to be a trustee for his wife, and prior to and recent statutes regulating married women's property, in all cases where real estate was conveyed direct to the wife during coverture for her sole and separate use, exclusive of her husband, he was in equity deemed a trustee for the wife, and as such held the legal title. 2 Story's Eq. Jur. sec, 1380; 1 Bishop on Married Women, sec. 800; Porter vs. Bank of Rutland, 19 Vt. 410; Bennett vs. Davis, 2 P. Wms. 316; Conway vs. Hale, 4 Hayw. 1, S-

C. 9 Am. Dec. 748; Walker vs. Walker, 9 Wall. 743. And where an estate was given to or engaged to be held by a husband for the use of his wife, the husband was thereby constituted a trustee for the separate use of the wife. Darley vs. Darley, 3 Atk. 398; McLean vs. Longlands, 5 Ves. 71; Rich vs. Cockell, 9 Ves. 369; Walter vs. Hodge, 2 Swanst. 92; 2 Story's Eq. Jur. 1372. While a court of equity, perhaps, would never have appointed Mr. Fraleigh to be trustee of the trust created by him for his wife and children, and would probably have removed him from the position upon proper application after he was appointed, yet there is no absolute rule of law rendering him incompetent to act in that capacity if appointed by authority of the instrument creating the trust, or in any other legal manner. 1 Perry on Trusts, sec. 59; 1 Lewin on Trusts; *41. Neither did the appointment of Mr. Fraleigh, and his acceptance thereof, revoke the trust deed. On the contrary, his acceptance bound him to execute the trust according to its terms; and he was invested with the same power, and subject to the same responsibilities, as other trustees, and the wife was entitled to the same protection in equity as any other *cestui que trust.* 1 Bishop on Married Women, sec. 801; Walker vs. Walker, 9 Wall. 743; 2 Story's Eq. Jur. sec. 1380; Tweedy vs. Urquhart, 30 Ga. 446. In this latter case, by an antenuptial settlement between Ephriam Tweedy and Isabella Hadley, made in contemplation of marriage, certain personal property was conveyed to a trustee for the sole use of Isabella, "separate from and wholly free from the control of her intended husband, or any future husband," with a provision authorizing Isabella to appoint any other person trustee in the place of the one named in the deed, should he die or resign. The trus-

tee having resigned, Isabella, then the wife of Tweedy, appointed her husband trustee, in accordance with the power contained in the deed. The court held that there was nothing in the relation of husband and wife, nor in the clause of the settlement in quotation above depriving the wife of the right to appoint her husband trustee, under the power reserved in the settlement, and then his appointment was valid.

3. At common law a married woman could, without the concurrence of her husband, execute a power, whether the power was given to her while sole or married (4 Kent's Com. *324; Gridley vs. Wynant, 23 How. 500; Gridley vs. Westbrook, 23 How. 503; Armstrong vs. Kerns, 61 Md. 364; Thompson vs. Murray, 2 Hill Chy. 204, S. C. 29 Am. Dec. 68; Barnes vs. Irvin, 2 Dallas, 199, S. C. 1 Am. Dec. 278); and she could in such cases execute the power in favor of her husband. Wood vs. Wood L. R. 10 Equity Cases, 220; Taylor vs. Eatman, 92 N. C. 601; 3 Kerr on Real Property, secs. 1857, 1859; Richards vs. Chambers, 10 Ves. 580. As the appointment of a trustee in this case was the exercise of a mere power, and at common law a married woman could exercise such power without the assent of her husband, it only remains to be seen whether this rule of the common law had been changed by any statute of this State, at the time of the execution of the power in question in this case. We are very clearly of the opinion that it had not. The statute in force at that time requiring the joinder of the husband and a separate acknowledgment of the wife were applicable only to transfers and conveyances of the wife's *property*. Sec. 1 act of February 4, 1835; sec. 4 act of March 6, 1845. The designation of a person to act as trustee and hold the legal title to property, of which

she was a beneficiary, was not a transfer by her of the trust property or any interest therein. Her appointment conferred no title upon her husband in the trust property. His title, powers and duties were derived from and determined by the original trust deed; not from her appointment. Her power to appoint possessed none of the elements of an estate. Norfleet vs. Hawkins, 93 N. C. 392; 4 Kent's Com. 337; Patterson vs. Lawrence, 83 Ga. 703, 10 S. E. Rep. 355; Schley vs. McCeney, 36 Md. 266; 3 Kerr on Real Property, secs. 1850, 1851; Cranston vs. Crane, 97 Mass. 459, S. C. 93 Am. Dec. 106.

4. It is also insisted that the substituted trustee acquired no title to the property which he could convey, without a deed from the retiring trustee. The trust deed authorized the named trustee to resign. He did resign, and thereupon ceased to be trustee. Mrs. Fraleigh was authorized to choose and appoint another. She did so, and thereupon E. M. Fraleigh, by the express language of the trust deed, took the trusteeship, subject to the trust in the deed limited. Even if the trust property was not by the language of the trust deed effectually transferred to the new trustee upon his appointment, without a formal conveyance from Mr. Love, yet by his appointment Mr. Fraleigh became the rightful trustee, and as such could unquestionably have maintained actions against Mr. Love for conveyances and possession of the trust property. Noble vs. Meymott, 14 Beav. 471; 2 Lewin on Trusts, *650. If the language of the trust deed was insufficient to vest title to the trust property in Mr. Fraleigh, but was sufficient to constitute him a trustee upon Mrs. Fraleigh's appointment, then the legal title remained in Mr. Love as a naked trust, and upon the execution of

the power of sale contained in the trust deed by the new trustee, the title passed to the purchaser, at least so far as the *cestui que trust* were concerned, by force of the terms of the trust deed granting power to sell, and by the deed of the new trustee executed under that power. National Webster Bank vs. Eldridge, 115 Mass. 424.

The decree of the Circuit Court, except the paragraph appointing D. McMillan as trustee, is reversed, with directions to dismiss the bill and amended bill as against the appellant; in other respects the decree is affirmed.